SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Julius Smith (A-62-13) (073059)**

**Argued April 27, 2015 -- Decided January 13, 2016**

**RABNER, C.J., writing for a unanimous Court.**

The Court considers the circumstances under which a trial court should grant a mistrial or continuance to allow defendant the opportunity to investigate newly discovered evidence revealed during trial.

At 11:30 p.m. on July 2, 2009, as Jayne Gourgiotis was walking home, a car with two men inside pulled up near her. The passenger got out of the car, approached her, and spoke to her. She looked at the man, whom she later described as black and heavyset, with short hair, thick eyebrows, a small nose, and some facial hair. He tapped Gourgiotis's hip with a gun and asked for her phone. She gave him her purse, which contained a cell phone, iPod, keys, wallet, identification, and about fifty dollars. The assailant immediately returned to the passenger seat of the car, and the car drove off.

Gourgiotis ran to a police station to report the crime. She described the robber and the car to a detective who then relayed the information to patrol units. While still at the station, Gourgiotis canceled her cell phone service. A patrol unit stopped a car that matched the description she had given. The detective drove her to the scene to look at the car and two suspects. She said that neither was the robber. A few hours after the robbery, two officers spotted a black Oldsmobile Aurora, which matched the description of a car involved in multiple robberies in Jersey City that night. The car was parked at a gas station. The officers saw two African-American men get into the car. One of the men, later identified as defendant, was about six feet tall, heavyset, had short hair, had some facial hair, and wore a white t-shirt. The other man, Jerry Martin, was a little taller, stocky, and had cornrows. The officers stopped the car as it started to pull away and saw a third man, Derrick McCrae, in the back seat. The officers spoke with the men, who gave conflicting stories, and then brought them to the police station where they were photographed and questioned further. The officers also searched the car but did not find any weapons or stolen items. Since Martin did not have the car's registration form, the police impounded the vehicle.

Three days after the robbery, Detective Angel Pastrana asked Gourgiotis to come to the police station to try to identify her assailant by reviewing photobooks. Detective Pastrana arranged for photos of defendant, Martin, and McCrae to be added to the photobooks before Gourgiotis saw them. She picked out defendant's photograph and said she was "pretty positive" that he had robbed her. Detective Pastrana then brought Gourgiotis to the impound lot to see if she could identify the car. Gourgiotis picked the Oldsmobile Aurora in which defendant had been stopped and said it "looked like" the car from the robbery. Based on her identification, the police obtained and executed an arrest warrant for defendant. At the time of his arrest, defendant had heroin in his possession. About six weeks after the robbery, the State Police arrested Stebbin Drew in a stolen black Infiniti and found Gourgiotis's cell phone in his possession. Drew is an African-American male, about six feet tall, and he weighed 175 pounds at the time. In August, a State Trooper called Gourgiotis and relayed the news to her. She told the assistant prosecutor about the call on the afternoon of jury selection in defendant's trial, more than one year later.

The trial began on November 1, 2010 and lasted four days. Defendant first learned about the new evidence on the morning of the second day of trial when the assistant prosecutor told defense counsel about Gourgiotis's call from the State Police. The State called Gourgiotis as its first witness. During cross-examination, defense counsel asked Gourgiotis some questions about the Trooper's call. Counsel then moved for a mistrial at sidebar, arguing that he had been denied what could be important exculpatory information. The trial judge denied the motion. The parties and the court later discussed a State Police report that the prosecutor's office had tracked down. The report confirmed Drew's arrest in August 2009 and noted that he had a bag of several stolen items including Gourgiotis's cell phone. Defense counsel renewed his request for a mistrial, arguing that the information should have been given to him in advance of trial and that he needed to investigate it. The State explained that it was in the midst of conducting an investigation and was searching for a photo of Drew. The court denied defendant's motion.

The State obtained Drew's 2009 arrest photo in time for the start of the next trial day. Gourgiotis returned to the witness stand and, when shown Drew's recent arrest photo, testified that she was confident that he was not the robber. The next day, the jury convicted defendant of armed robbery and possession of a firearm for an unlawful purpose, but acquitted him of unlawful possession of a handgun. At sentencing, the judge imposed a twenty-year term of imprisonment for the robbery offense, subject to an eighty-five percent period of parole ineligibility. The

court imposed a concurrent three-year sentence for defendant's possession of heroin at the time of his arrest.

On appeal, defendant claimed that the trial court erred in denying his motion for a mistrial. Defendant argued, in the alternative, that the court should have granted a continuance to allow him to investigate the newly discovered evidence about Gourgiotis's cell phone. The Appellate Division affirmed in an unpublished decision, holding that the trial court did not abuse its discretion. The Court granted certification limited to whether the trial court should have granted defendant's motion for a mistrial or a continuance to allow him to investigate the newly discovered evidence revealed during trial. 217 N.J. 282 (2014).

**HELD**: The trial court abused its discretion in declining to grant a mistrial, particularly in light of the materiality of the evidence that surfaced midtrial, defendant's inability to investigate it while the trial proceeded, and the nature and strength of the evidence against defendant.

1. Defendant claims that the delay in the disclosure of key evidence until trial warranted a mistrial and that the trial court's denial of his motion compromised his right to a fair trial. A mistrial should only be granted to prevent an obvious failure of justice. Whether an event at trial justifies a mistrial is a decision entrusted to the sound discretion of the trial court. Appellate courts will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice. When addressing a motion for a mistrial, trial courts must consider the unique circumstances of the case. If there is an appropriate alternative course of action, a mistrial is not a proper exercise of discretion. (pp. 14-15)

2. The Federal and State Constitutions guarantee criminal defendants a meaningful opportunity to present a complete defense. Basic elements of due process enable defendants to face and challenge the State's evidence. These rights are not absolute and may be limited by other legitimate public interests. The Court Rules also assist defendants in mounting a complete defense and place a continuing duty on the State to provide discovery. Late discovery can cause unfair surprise and raise due process concerns. When a party fails to comply with its obligations, the discovery rule expressly states that the court may grant a continuance or delay during trial or enter such other order as it deems appropriate. (pp. 15-16)

3. Here, the State asserts that defendant waived the argument he advances on appeal. There is no support in the record for this assertion as defendant made two motions for a mistrial and did not withdraw or waive either request. Further, defendant's request for a new trial relies in part on case law about newly discovered evidence, discussed in State v. Carter, 85 N.J. 300, 314 (1981), and other decisions of the Court. To obtain a new trial under that standard, a defendant must show that the new evidence is (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted. The test does not control in this case for two reasons. First, the settled body of law on newly discovered evidence addresses how to assess evidence acquired by the defense after trial. Here, defendant focuses on evidence that was disclosed late, but not after trial. Second, the test asks whether evidence that the jury did not hear would probably change its verdict. In this case, the jury heard about the discovery of Gourgiotis's cell phone. Counsel sought a mistrial to investigate that new information further, rather than be forced to rely on the State's rapid investigation in the middle of trial. (pp. 16-17)

4. Defendant was entitled to timely discovery of the evidence in question as it went to the heart of the defense. The trial court took steps to try to remedy the late disclosure. Once the court denied the request for a mistrial and directed that the trial continue, defendant did not have the ability to investigate the new material. A trial court, in its discretion, has wide latitude to order a brief continuance and give defendant time to investigate key evidence that surfaces during trial. To determine whether a mistrial was needed to prevent an obvious failure of justice, the courts should also considers the nature and strength of the evidence presented. The evidence in this case was not overwhelming and rested on Gourgiotis's identification of defendant. Certain undisputed facts raise questions about that identification. Gourgiotis saw her assailant only for a brief amount of time. The opportunity of the witness to view the criminal at the time of the crime affects the reliability of an identification. Further, the victim and defendant are of different races. For many years, this Court has recognized that witnesses may have a more difficult time when they identify a person of a different race and that cross-racial identifications require careful scrutiny. Defendant moved for a mistrial when the evidence came to light in the midst of a fast-paced, short trial. Under these unusual facts, it was an abuse of discretion for the trial court to deny the motion. (pp. 18-21)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the trial court for a new trial. Defendant's conviction for possession of a controlled dangerous substance remains intact.

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON join in CHIEF JUSTICE RABNER'S opinion. JUSTICE FERNANDEZ-VINA** and **JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

JULIUS SMITH,

    Defendant-Appellant.


       Argued April 27, 2015 – Decided January 13, 2016

       On certification to the Superior Court,
       Appellate Division.

       Kevin W. Roe argued the cause for appellant.

       Jenny M. Hsu, Deputy Attorney General,
       argued the cause for respondent (John J.
       Hoffman, Acting Attorney General of New
       Jersey, attorney).


    CHIEF JUSTICE RABNER delivered the opinion of the Court.

    During an encounter that lasted ten seconds, a woman was robbed at gunpoint. She surrendered her purse with her cell phone inside it, and the robber drove away in a car. She later identified defendant Julius Smith as her assailant.

    Six weeks after the robbery, the State Police recovered the victim's cell phone when they arrested a third person. Law enforcement officers contacted the victim, but the prosecutor

and local police did not learn about the discovery of the phone until the middle of defendant's trial -- fifteen months later.

Defense counsel twice moved for a mistrial to investigate this critical information. The trial court took alternate measures to try to remedy the belated disclosure but denied defendant's motion. Under the circumstances, we find that it was an abuse of discretion not to grant a mistrial, particularly in light of the materiality of the evidence that surfaced mid-trial, defendant's inability to investigate it while the short trial proceeded, and the nature and strength of the evidence against defendant. To avoid a manifest injustice, see State v. Jackson, 211 N.J. 394, 407 (2012) (citations omitted), we remand for a new trial. We therefore reverse the judgment of the Appellate Division, which affirmed defendant's conviction.

## I.

At about 11:30 p.m. on July 2, 2009, Jayne Gourgiotis was walking to her home in Jersey City after having had a few drinks with friends. She wore earphones while she walked.

Gourgiotis testified that a "long boaty type dark car" with two men inside pulled up near her. The passenger stepped out of the car and approached her. He said something that she could not hear because of the earphones, so she removed them and then looked at the individual. She described him as "a black man, short hair, heavyset a little bit and he was wearing a black t-

2

shirt" and jeans. She added that he had thick eyebrows, a small nose, and some facial hair.

The man tapped Gourgiotis's hip with a handgun and asked for her phone; she handed over her purse, which contained a cell phone, iPod, keys, a wallet, identification, and about fifty dollars. The man immediately returned to the passenger seat of the car, and the car drove off. The entire incident lasted about ten seconds. Of that time, Gourgiotis looked at her assailant for about four seconds.

Gourgiotis then ran to a nearby police station to report the crime. She described the robber and the car to a detective who relayed the information to patrol units. While at the station, within ten to twenty minutes of the robbery, Gourgiotis canceled the service to her cell phone.

Soon after, a patrol unit stopped a car that matched the description Gourgiotis had given. The detective drove Gourgiotis to the scene to look at the car and two suspects. She said that neither man was the robber and that the car was not used in the robbery. Later that night, the police recovered Gourgiotis's empty purse on a street in the area and returned it to her. They did not test it for fingerprints based on expert advice that the leather purse could not "hold prints."

A few hours after the robbery, two officers spotted a black Oldsmobile Aurora, which matched the description of a car

3

involved in multiple robberies in Jersey City that night.  The car was parked at a gas station.  The officers saw two African-American men leave the mini-mart at the station and get into the car.  One of the men, later identified as defendant, was about six feet tall, heavyset, had short hair and some facial hair, and wore a white t-shirt; he got into the front passenger seat.  The other man, Jerry Martin, was a little taller, stocky, and had cornrows; he entered on the driver's side.  The officers stopped the car as it started to pull away and saw a third man, Derrick McCrae, in the back seat.

The officers spoke with the men, who gave conflicting stories, and brought them to the police station where they were photographed and questioned further.  The officers also searched the car but did not find any weapons or stolen items.  Because Martin did not have the car's registration form, the police impounded the vehicle.

Three days after the robbery, on July 6, 2009, Jersey City Detective Angel Pastrana asked Gourgiotis to come to the police station to try to identify her assailant.  She reviewed some photobooks the department maintains.  The books are organized by gender, race, and height and are updated regularly.  Each binder contains about 200 photos, with four to a page.

Detective Pastrana arranged for photos of defendant, Martin, and McCrae to be added to the photobooks before

4

Gourgiotis saw them. The detective got their names from a police report about the July 3 incident. Other than that, he knew nothing about the men. Gourgiotis picked out defendant's photograph and said she was "pretty positive" that he had robbed her. She recognized him from his "buzzed cut" hair, eyebrows, nose, and face.

Detective Pastrana then brought Gourgiotis to the impound lot to see if she could identify the car involved in the robbery. Gourgiotis picked the Oldsmobile Aurora that defendant was stopped in on July 3. She said the car "looked like" the one from the robbery but did not identify it as the actual car. Based on Gourgiotis's identification of defendant's photograph and the car, the police obtained and executed an arrest warrant for defendant.

About six weeks after the robbery, on August 10, 2009, the State Police arrested Stebbin Drew in a stolen black Infiniti. They found Gourgiotis's cell phone in his possession. Drew is an African-American male, about six feet tall, and he weighed 175 pounds at the time. In late August, a State Trooper called Gourgiotis and relayed the news to her. She first told the assistant prosecutor about the call on the afternoon of jury selection in defendant's trial, more than one year later. Detective Pastrana testified that he was not contacted about the matter before trial.

5

A grand jury in Hudson County indicted defendant on September 22, 2009.  The first three counts of the indictment relate to the robbery on July 3, 2009.  Those counts charge defendant with first-degree armed robbery, N.J.S.A. 2C:15-1 (count one); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two); and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count three).[1]

The short trial began on November 1, 2010.  It lasted four days including jury selection and time for deliberation.  The court selected the jury on Monday, November 1.  It conducted a Wade[2] hearing at the start of the second day, Wednesday, November 3, and the jury then heard opening statements and the testimony of three witnesses.  The jury heard the remainder of the

---

[1]  The indictment contains nine additional counts relating to defendant's arrest on July 6, 2009.  Those charges include third-degree possession of a controlled dangerous substance, heroin, N.J.S.A. 2C:35-10(a)(1) (count four), other related drug charges (counts five to eleven), and a weapons offense (count twelve).

The jury only heard evidence about the first three counts. It appears that the additional counts were resolved by an agreement of the parties.  Defendant was convicted and sentenced on count four, and the remaining counts were dismissed. Defendant's conviction for count four is not challenged in this appeal.

[2]  United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967) (governing admissibility of identification evidence).

6

testimony, summations, and the jury charge on the third day, Thursday, November 4, and returned a verdict the next day. Because the sequence of events is relevant, we recount the proceedings in greater detail.

Defendant first learned about the new evidence on the morning of the second day of trial, when the assistant prosecutor told defense counsel about Gourgiotis's call from the State Police. After the court conducted the Wade hearing and ruled that the identification evidence would be admitted, the parties gave opening statements. The State next called Gourgiotis as its first witness.

During cross-examination, defense counsel asked Gourgiotis some questions about the Trooper's call. Counsel then moved for a mistrial at sidebar. He did not blame the prosecutor's office for the late disclosure but argued that he had "been denied what could be very important exculpatory information."

The trial judge denied the mistrial motion. The court explained that it was unlikely any calls had been made on the phone because service was turned off within minutes of the robbery. In addition, the court noted that the State had not yet been able to confirm the call with the State Police.

Cross-examination resumed, and after defense counsel posed more questions about the cell phone and the State Trooper, the judge called the parties back to sidebar. The court observed

7

that "after the months, a phone call like this is a collateral issue." As a result, the court did not allow defense counsel to pursue the line of questioning. After some additional questions, the trial broke for lunch.

Following the break, the parties and the court discussed a State Police report that the prosecutor's office had tracked down. The report confirmed Drew's arrest on August 10, 2009, noted that he had a bag of at least six stolen items including Gourgiotis's cell phone, and contained a description of Drew.

Defense counsel again asked for a mistrial. He argued that the information "should have been given to [him] well in advance of . . . trial" and that he needed to investigate and follow up on the very important development. In response, the State explained that it was in the midst of conducting an investigation, was searching for a photo of Drew, and was open to a possible stipulation. Defense counsel noted, it "may be possible to save this case and not have a mistrial" with a stipulation, "[b]ut I think we should wait."

The court again denied defendant's mistrial motion. The judge reasoned that the new evidence was consistent with defendant's strategy -- that another person committed the robbery. Afterward, the judge addressed the jury and explained that neither attorney knew about the recovery of the cell phone, "and they're . . . looking for some quick information to see if

8

it in fact could affect this case at all." The judge also confirmed that the jurors could sit the following Monday, if necessary.

The trial then continued with testimony from a detective. Later in the afternoon, outside the jury's presence, the State produced two photos of Drew from 2007 and 2008, along with his criminal record. Defense counsel argued that the photos were dated, and he highlighted different descriptions in the materials provided. According to the rap sheet, Drew was 5'8" tall and 140 pounds; the State Police report described him as 6' tall and 175 pounds. The assistant prosecutor added that he was trying to get a photo from Drew's arrest on August 10, 2009.

The court proposed that the trial continue and that Gourgiotis be recalled the following morning. After the discussion, another police officer testified until the trial adjourned for the day.

The State obtained Drew's 2009 arrest photo in time for the start of the next trial day, Thursday, November 4. Gourgiotis returned to the witness stand and, when shown Drew's recent arrest photo, she testified that she was very confident that he was not the person who robbed her. Defense counsel, in turn, cross-examined Gourgiotis on the issue.

Detective Pastrana testified next, after which defense counsel read a joint stipulation to the jury:

9

> That the victim's phone was found in the possession of an individual arrested by the State Police on August 10, 2009 in his vehicle at the time of the arrest.
>
> Two, the man arrested is a black male age twenty five, weight a hundred and seventy five pounds wearing a white T-shirt at the time of his arrest.
>
> Three, that person at that time had an outstanding warrant from the Jersey City police.

Both attorneys presented closing arguments after a break. In his summation, defense counsel relied on the stipulation and the discovery of the cell phone to argue that someone else committed the robbery.

The jury reached a verdict the next day, November 5. The jurors found defendant guilty of armed robbery and possession of a firearm for an unlawful purpose, and acquitted him of the third charge, unlawful possession of a handgun. At sentencing, the judge merged the robbery and firearm counts and imposed a twenty-year term of imprisonment for the robbery offense, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2. Pursuant to the parties' agreement, the court imposed a concurrent three-year sentence for defendant's possession of heroin at the time of his arrest.

Defendant appealed. He raised seven arguments, only one of which is relevant to this appeal: whether the trial court erred

in denying defendant's motion for a mistrial.  Defendant argued, in the alternative, that the court should have granted a continuance to allow him to investigate the newly discovered evidence about Gourgiotis's cell phone.

The Appellate Division affirmed the conviction.  In an unpublished decision, the panel held that the trial court did not abuse its discretion when it refused to grant a mistrial.  The panel concluded that the ruling did not lead to an obvious failure of justice.  The Appellate Division explained that a trial court should not grant a mistrial when there is an appropriate, alternate course.

The panel rejected defendant's claim of prejudice on several grounds.  It observed that the newly discovered evidence "did not create a new theory for the defense to pursue; it merely bolstered defendant's third party liability theory."  In addition, the panel noted that Gourgiotis had canceled her cell-phone service soon after the robbery and, in any event, defendant could have subpoenaed the phone records pretrial.  The panel also observed that defendant received relevant documents about Drew's arrest, secured a stipulation, cross-examined Gourgiotis about the discovery of the phone and Drew's photo, and argued those issues in summation.

We granted defendant's petition for certification limited to "whether the trial court should have granted defendant's

11

motion for a mistrial" or "granted a continuance to allow defendant to investigate the newly discovered evidence revealed during trial."  217 N.J. 282 (2014).

## II.

Defendant maintains he is innocent.  He argues that his conviction is based on a "weak identification" that is not supported by physical evidence.  In the middle of trial, he received new evidence that he claims is highly relevant and legitimizes his defense.  Rather than have a meaningful opportunity to investigate the evidence, he submits that he faced the unenviable task of having to fit it into a trial already underway.  Defendant argues that he was entitled to a mistrial to prepare a proper third-party liability defense or, at the very least, a continuance to investigate the new information further.[3]

Defendant relies partly on the standard outlined in State v. Carter, 85 N.J. 300, 314 (1981), in support of his argument that the newly discovered evidence in this case warrants a new trial.  He insists that the alternative remedies afforded him

---

[3]  In a supplemental brief to this Court, defendant states that he hired a private investigator.  He now claims for the first time that Drew is prepared to exculpate defendant.  Defendant offers no further information on the point, and we do not rely on his unsupported claim.  See, e.g., State v. Nash, 212 N.J. 518, 526-27 (2013) (assessing newly discovered evidence in the form of sworn or certified statements presented to trial court).

during trial were inadequate and that the denial of his motion for a mistrial resulted in a manifest injustice.  He contends that he has been denied a fair trial and that his right to due process has been violated.  Defendant also firmly disputes that he waived his request for a mistrial.

The State, represented by the Attorney General, argues that defendant is not entitled to a new trial.  The State claims this case does not involve "newly discovered evidence" under the case law because the third-party evidence was investigated during trial, presented to the jury, and discussed in summation.

The State also contends that defendant's rights of confrontation and compulsory process were carefully safeguarded by the investigation that occurred mid-trial and the curative actions the trial court took to address the new evidence.  In addition, the State contends that the third-party evidence was collateral and not sufficiently material to affect the jury's verdict.  The State also submits that defense counsel waived his claim of error by acceding to the court's curative actions; the State points in particular to counsel's statement that a stipulation might avoid a mistrial.  For all those reasons, the State maintains that the extraordinary remedy of a mistrial should not have been granted, and that the trial court did not abuse its discretion when it denied the request.

13

III.

A mistrial should only be granted "to prevent an obvious failure of justice." State v. Harvey, 151 N.J. 117, 205 (1997), cert. denied, 528 U.S. 1085, 120 S. Ct. 811, 145 L. Ed. 2d 683 (2000). Whether an event at trial justifies a mistrial is a decision "entrusted to the sound discretion of the trial court." Ibid. (citing State v. DiRienzo, 53 N.J. 360, 383 (1969)). Appellate courts "will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice." Jackson, supra, 211 N.J. at 407 (quoting Harvey, supra, 151 N.J. at 205).

To address a motion for a mistrial, trial courts must consider the unique circumstances of the case. State v. Allah, 170 N.J. 269, 280 (2002); State v. Loyal, 164 N.J. 418, 435-36 (2000). If there is "an appropriate alternative course of action," a mistrial is not a proper exercise of discretion. Allah, supra, 170 N.J. at 281. For example, a curative instruction, a short adjournment or continuance, or some other remedy, may provide a viable alternative to a mistrial, depending on the facts of the case. See State v. Clark, 347 N.J. Super. 497, 509 (App. Div. 2002).

Defendant claims that the delayed disclosure of key evidence until trial warranted a mistrial. He asserts that the

14

trial court's denial of his motion compromised his right to a fair trial.

The Federal and State Constitutions "guarantee criminal defendants 'a meaningful opportunity to present a complete defense.'" State v. Garron, 177 N.J. 147, 168 (2003) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146, 90 L. Ed. 2d 636, 645 (1986); State v. Budis, 125 N.J. 519, 531 (1991)). A defendant has the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. Those basic elements of due process enable defendants to face and challenge the State's evidence. See Budis, supra, 125 N.J. at 531; Garron, supra, 177 N.J. at 169.

The constitutional rights to compulsory process and confrontation are not absolute, though. State v. Garcia, 195 N.J. 192, 202-03 (2008); Garron, supra, 177 N.J. at 169. They may be limited by other legitimate public interests, including "the fair and efficient administration of justice." Taylor v. Illinois, 484 U.S. 400, 414-15, 108 S. Ct. 646, 656, 98 L. Ed. 2d 798, 814 (1988); see also Garcia, supra, 195 N.J. at 203.

The Court Rules also assist defendants to mount a complete defense. Rule 3:13-3 entitles defendants to broad discovery and imposes an affirmative duty on the State to make timely disclosure of relevant information. R. 3:13-3(b)(1). The rule

15

also places a continuing duty on the State to provide discovery. R. 3:13-3(f).

Late discovery can cause unfair surprise and raise due process concerns. See State v. Zola, 112 N.J. 384, 418 (1988). When a party fails to comply with its obligations, the discovery rule expressly states that the court may "grant a continuance or delay during trial" or "enter such other order as it deems appropriate." R. 3:13-3(f). A court's failure to take appropriate action to remedy a discovery violation can implicate the defendant's right to a fair trial. Clark, supra, 347 N.J. Super. at 507, 510.

### IV.

### A.

We turn to two preliminary issues. First, the State contends that defendant waived the argument he advances on appeal. We do not find support for that in the record. Defense counsel twice asked for a mistrial. He did not withdraw or waive his request by working on a stipulation with the prosecutor. Counsel instead abided by the court's rulings and proceeded accordingly.

Second, defendant's request for a new trial relies in part on case law about "newly discovered evidence," discussed in Carter, supra, and other decisions of the Court. To obtain a new trial under that standard, a defendant must show that the

16

new evidence is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." Nash, supra, 212 N.J. at 549 (quoting Carter, supra, 85 N.J. at 314).

The test does not control in this case for two reasons. First, the settled body of law on newly discovered evidence addresses how to assess evidence acquired by the defense after trial. Here, defendant focuses on evidence that was disclosed late but not after trial. Second, the test asks whether evidence that the jury did not hear would probably change its verdict. Ibid. In this case, the jury heard about the discovery of Gourgiotis's cell phone. Counsel sought a mistrial to investigate that new information further, rather than be forced to rely on the State's rapid investigation in the middle of trial.

We, therefore, evaluate defendant's claim of error under the more traditional framework outlined earlier. We examine whether it was an abuse of discretion, which resulted in a manifest injustice, for the trial court to deny defendant's mistrial motion. Jackson, supra, 211 N.J. at 407. We assess the unique facts of the case to make that determination. Allah, supra, 170 N.J. at 280.

17

B.

Defendant was plainly entitled to timely discovery of the evidence in question -- law enforcement's recovery of the victim's cell phone in the hands of a third party. The State concedes that it was required to disclose that information before trial. See R. 3:13-3(b)(1). Defendant does not allege that the prosecution team acted in bad faith, and nothing in the record suggests otherwise. The assistant prosecutor disclosed the evidence shortly after he learned about it.

The evidence went to the heart of the defense. Defendant maintained at trial that someone else committed the robbery. The fact that law enforcement found the victim's stolen cell phone when they arrested someone other than defendant is directly related to the defense of third-party guilt.

The trial court took steps to try to remedy the late disclosure. Of particular note, it allowed defense counsel a second opportunity to cross-examine the victim after the State obtained photographs of Drew. The parties also reached agreement on a stipulation about the new evidence, which defendant stressed in summation. That said, once the court denied the request for a mistrial and directed that the trial continue, defendant did not have the ability to investigate the important, new material. Instead, he had to rely on piecemeal information the State uncovered as the trial unfolded.

18

That information left several unanswered questions. How did Drew acquire the phone? Who gave it to him? Was it used in the minutes after the robbery to place calls? Was it used in some other way? Answers to those questions could have bolstered the defense, but it was not possible to investigate them in the middle of a short trial without granting an adjournment -- or a mistrial. Although defendant knew early on that the victim's phone had been stolen, he had no basis to know of Drew's involvement before trial began and no ability to examine the actual phone.

Defendant asked only for a mistrial. A trial court, in its discretion, has wide latitude to order a brief continuance and give defendant time to investigate key evidence that surfaces during trial. See, e.g., R. 3:13-3(f).

To determine whether a mistrial was needed "to prevent an obvious failure of justice," Harvey, supra, 151 N.J. at 205, we also consider the nature and strength of the evidence presented. The evidence in this case was not overwhelming. It rested on Gourgiotis's testimony, in particular, her identification of defendant.

Certain undisputed facts raise questions about that identification. First, Gourgiotis saw her assailant only for a brief amount of time. She testified that the entire incident lasted ten seconds and that she looked at the assailant for only

19

about four seconds.  Both case law and common sense tell us that "the opportunity of the witness to view the criminal at the time of the crime" affects the reliability of an identification. State v. Madison, 109 N.J. 223, 239-40 (1988) (quoting Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253, 53 L. Ed. 2d 140, 154 (1977) (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401, 411 (1972))).  Second, the victim and defendant are of different races.  For many years, this Court has recognized that witnesses may have a more difficult time when they identify a person of a different race, see State v. Cromedy, 158 N.J. 112, 120-23 (1999), and that cross-racial identifications require careful scrutiny, id. at 131; see also State v. Henderson, 208 N.J. 208, 240, 267 (2011).

Gourgiotis offered some evidence to corroborate the identification:  her testimony that the black Oldsmobile Aurora -- in which defendant was a passenger on July 3 -- "looked like" the car involved in the robbery.  But defendant possessed none of the stolen items when the police stopped him.  Aside from Gourgiotis's purse, found empty on the street, the most important piece of physical evidence stolen from the victim -- her cell phone -- inculpated someone other than defendant.  The State Police recovered it from Drew.

Defendant moved for a mistrial when the evidence came to light in the midst of a fast-paced, short trial.  Under the

20

unusual facts before us, we find it was an abuse of discretion for the trial court to deny the motion.  To prevent a manifest injustice, we reverse the part of defendant's conviction that is based on the jury's verdict and order a new trial.  Defendant's conviction for possession of a controlled dangerous substance is not affected by this ruling.

We appreciate the challenges that trial court judges face as they attempt to manage a crowded docket.  We do not lightly question their discretionary authority to determine the pace of a trial and decide when a brief adjournment is warranted.  Our decision instead turns on the specific facts of this case:  the materiality of the evidence that first surfaced in the middle of the short trial, defendant's inability to investigate it without additional time, and the strength of the evidence against defendant.

V.

For the reasons set forth above, we reverse the judgment of the Appellate Division and order a new trial for the charges of armed robbery (count one) and possession of a firearm for an unlawful purpose (count two).  Defendant's conviction for possession of a controlled dangerous substance (count four) remains intact.

JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON join in CHIEF JUSTICE RABNER'S opinion.  JUSTICE FERNANDEZ-VINA and JUDGE CUFF (temporarily assigned) did not participate.

21

SUPREME COURT OF NEW JERSEY

NO.    A-62            SEPTEMBER TERM 2013

ON APPEAL FROM        Appellate Division, Superior Court

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

            v.

JULIUS SMITH,

      Defendant-Appellant.

DECIDED            January 13, 2016
           Chief Justice Rabner            PRESIDING

OPINION BY        Chief Justice Rabner

CONCURRING/DISSENTING OPINION BY

DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | -------------------- | |
| TOTALS | 5 | |