**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3524-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

GUILIO MESADIEU, a/k/a
GUILIO MESUDIEU,
EMMANUEL MERVUILUS,
JOSEPH PIERRE, and JASON
PIERRE,

      Defendant-Appellant.

_____

Submitted March 20, 2019 – Decided May 13, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-04-0293.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Meredith L. Balo,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Guilio Mesadieu appeals from his March 13, 2017 judgment of conviction for second-degree certain persons not to have firearms, N.J.S.A. 2C:39-7, following a jury trial. Defendant was found in a dark parking lot, asleep in his car, with a handgun placed on each of his legs. The judge sentenced defendant to an extended term of twelve years in prison with a six-year parole disqualifier. Defendant argues that (1) the trial judge barred him from presenting a defense; (2) the trial judge improperly granted private counsel's motion to withdraw; (3) his motion for a mistrial should have been granted after the State disclosed a video mid-trial; (4) his motion to suppress guns found in his car should have been granted; (5) the State presented improper opinion testimony; (6) the prosecutor improperly shifted the burden of proof to defendant during summation; and (7) his sentence was excessive. After reviewing the record in light of the contentions advanced on appeal, we affirm.

On December 13, 2014, Elizabeth Police Officers Cruz and Farinas were dispatched to a multi-family complex in response to a report of a "[d]isorderly group." Without activating their overhead lights or sirens, the officers drove to the rear of the unlit driveway.

Officer Cruz observed one car exiting the driveway and three other cars parked in the lot. The first car that the officers approached was running with its headlights on, and a man who was under the influence was sitting in the driver's seat. The officers arrested him and placed him in the rear of their patrol car.

The second car the officers approached was also running, with loud music emanating from it. When he approached the driver's side of the car, Officer Cruz saw defendant in the driver's seat holding a revolver on each of his thighs with his fingers on the triggers. Cruz also saw two empty bottles of Hennessy Cognac and a bullet-proof vest. Defendant's chair was reclined back, his eyes were closed, and he did not notice the approaching officers.

Before they could open the doors of defendant's car, the driver of the third car got out of his vehicle. Using a normal tone of voice so not to alert defendant, Cruz pointed his weapon at this man, handcuffed him, and placed him near the first car. Officer Farinas stood by the passenger's side of defendant's car. The officers then quietly opened the front doors of defendant's car, each placed his hand on one of defendant's hands, then loudly said "police, don't move . . . ."

Officer Cruz testified at trial that defendant appeared calm, had no difficulty exiting the car and did not appear under the influence of any substance. An expert testified the guns were operable.

A-3524-16T4

K.A.[1] testified for the defense that he and some friends were drinking and celebrating the birthdays of defendant and another friend. When officers approached his car, K.A. told them that he was waiting for his cousins before going out to celebrate. The officers saw a cup of liquor in K.A.'s cup holder and arrested him for driving under the influence.

The officers then went to the third car, "Maki's car," woke up Maki, saw bottles in his car, and arrested him for driving under the influence. The officers placed Maki in the rear of the patrol car, next to K.A. K.A. then observed the officers approach defendant's car, pull defendant out of his car, and "slam[]" him to the ground. Defendant appeared dazed as the officers held him up and called for back-up.

Defendant testified that to celebrate his and another friend's birthday, he went to the liquor store, then went to the parking lot where his friends were talking and drinking in their cars. His radio was on, but he never played loud music. He became "woozy" and passed out in the car. He did not remember anything else until he woke up the next morning at the police station. Defendant noticed a gash on his left knee and his pants and jacket were ripped. Defendant testified that he did not have guns in the car, he never possessed a gun, and he

---

[1] We use initials to preserve the witness's confidentiality.

A-3524-16T4

was not a violent person.  Defendant also testified that, though they were friends, that trial day was the first time in two years he had spoken with K.A., and the first time he heard about "being body slammed in the parking lot . . . ."

Elizabeth Police Officer Benenati, who arrived as back-up, testified as a rebuttal witness for the State that when he arrived at the scene, defendant was standing on his own, in handcuffs.  Defendant was "[p]ossibly" under the influence of drugs or alcohol, but was not unconscious, nor did he appear "in a state of blackout."  The officer testified that defendant swayed and staggered a bit but never had to be held up or supported "in any way."  A video of defendant at the police station showed him obeying instructions and standing on his own.

Defendant raises the following issues on appeal:

> POINT I:   THE COURT'S DECISION TO BAR DEFENDANT FROM PRESENTING A DEFENSE AT TRIAL WAS AN ABUSE OF DISCRETION.
>
> POINT II:   IT WAS ERROR FOR THE COURT TO GRANT PRIVATE COUNSEL'S MOTION TO BE RELIEVED BASED ON DEFENDANT'S FAILURE TO PAY LEGAL FEES. [2]
>
> POINT III:  THE DEFENDANT'S MOTION FOR A MISTRIAL FOLLOWING LATE DISCLOSURE OF DISCOVERY AFTER COMMENCEMENT OF THE TRIAL SHOULD HAVE BEEN GRANTED.

---

[2]  For this issue and Point V, defendant does not indicate, as required, that this issue was not raised in the trial court.  R. 2:6-2(a)(1).

POINT IV:  THE WARRANTLESS SEARCH OF DEFENDANT'S VEHICLE VIOLATED HIS RIGHT TO BE FREE FROM AN UNLAWFUL SEARCH AND SEIZURE GUARANTEED BY THE NEW JERSEY AND UNITED STATES CONSTITUTIONS.

POINT V:  THE STATE PRESENTED IMPROPER OPINION TESTIMONY FROM REBUTTAL WITNESS OFFICER BENENATI WHICH DENIED DEFENDANT A FAIR TRIAL.

POINT VI:  COMMENTS BY THE PROSECUTOR IN SUMMATION VIOLATED DEFENDANT'S PRESUMPTION OF INNOCENCE.

POINT VII:  THE DEFENDANT'S EXTENDED TERM SENTENCE OF TWELVE (12) YEARS WITH SIX (6) YEARS OF PAROLE INELIGIBILITY WAS EXCESSIVE AND SHOULD BE MODIFIED AND REDUCED.  (NOT RAISED BELOW).

I.

Defendant, who represented himself at trial, maintains the trial judge abused her discretion when she precluded him from presenting evidence.  He argues that because he did not present "[t]estimony concerning what law enforcement purportedly told him," he was unable to prove that "his possession of the guns in the car was bogus."

We review a trial court's evidentiary rulings under an abuse of discretion standard.  State v. Scott, 229 N.J. 469, 479 (2017).  "A reviewing court must not

6

'substitute its own judgment for that of the trial court' unless there was a 'clear error in judgment'—a ruling so 'wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Perry, 225 N.J. 222, 233 (2016)).

The United States Constitution and New Jersey Constitution guarantee all criminal defendants "a meaningful opportunity to present a complete defense." State v. Garron, 177 N.J. 147, 168 (2003) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). A "core value[]" of the New Jersey Constitution and its Compulsory Process Clause includes a defendant's right "to present all relevant evidence necessary for the defense and the right to a fair trial." Garron, 177 N.J. at 166. However, "a defendant does not have a right to call a witness who will offer irrelevant testimony." State v. Garcia, 195 N.J. 192, 203 (2008).

Relevant evidence "means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403.

Here, defendant sought to elicit testimony from members of the Union County Prosecutor's Office homicide unit regarding a "deal." Defendant gave

7

only vague information about this "deal," and the trial judge found it would not have been relevant. Defendant insisted on calling unknown members of the prosecutor's office to refresh his own memory of what was allegedly discussed with him during a December 19, 2014 meeting. The trial judge explained to defendant:

> Then maybe you have to interview them first. I'm not going to permit you to conduct a fishing expedition on the stand if it turns out the jurors are going to be hearing evidence or information that's not relevant to their determination in this case. Again, maybe it's relevant. Maybe it's not. But I'm not going to permit you just to call witnesses -- and you don't even know who they are at this point -- to testify about things that might not be, again, relevant and material for this jury.
>
> . . . .
>
> I can't stop you nor would I from subpoenaing those witnesses. All I'm saying, just because you subpoena someone and even if they show up in court, doesn't mean they're going to testify. So all I can say is do whatever you think you feel is best for you and your case. I can't guide you and that's again -- I don't see you getting up and speaking to her. This is why you have stand-by counsel for this kind of situation where I think you're not quite sure of how to proceed, and I really can't give you legal advice but there's somebody sitting right there who can. It just seems to me might be a good time to actually ask her. You don't have to take [stand-by counsel]'s advice. All I can ask you to do is at least consider speaking to her about it. This might be important. The whole trial is important but maybe what you discussed is relevant. From what I'm

hearing right now it's not, and I'm not going to let the jury hear that testimony. If you want to subpoena witnesses, if you want to try and figure out who it was that you spoke to, that's fine. It's just there's not a whole lot of time that you have.

Defendant told the trial judge that during this meeting at the prosecutor's office, he was told that he would be released from jail if he accepted "assignments." Defendant then informed the judge that he wanted to tell the jury about a meeting with one of his prior attorneys and a former detective at the jail. Defendant would not give the judge further information on what this meeting was about:

> THE COURT: This is like pulling teeth, Mr. Mesadieu. You're not making it easy. Could you tell me what the discussion was about? If you're reluctant, that's fine, because I sense you don't want to respond. That's my interpretation of your demeanor at this moment. You seem a little reluctant. Are you reluctant to talk to me about the conversation?
>
> [DEFENDANT]: Yes.
>
> THE COURT: But you understand if you don't tell me what the conversation was about [at] that meeting, then I can't make a decision about whether it's relevant or not; and that means I'm going to bar you from talking about it.
>
> [DEFENDANT]: I'm not going to discuss that.

THE COURT:  All right.  So the only conversation you want the jurors to hear about is the one that you informed me about, the one on December 19, 2014?

[DEFENDANT]:  Well, I'm not going to discuss the conversation.

THE COURT:  Which conversation?

[DEFENDANT]:  The conversation of me and the person in the county.  I understand.

THE COURT:  Not in the prosecutor's office but in the county?

[DEFENDANT]:  But I will speak on it.

THE COURT:  You will speak on what?

[DEFENDANT]:  On the fact that I received that visit.

THE COURT:  In the jail?

[DEFENDANT]:  In the jail.

THE COURT:  You can't speak on something that's not relevant.

[DEFENDANT]:  Of course, it's relevant.

THE COURT: Then you have to tell me what happened during the conversation for me to decide whether it's relevant. . . .

The judge held a Rule 104 hearing in which a detective and assistant prosecutor testified regarding alleged pressure placed on defendant to become a

confidential informant. After their testimony, the judge found that defendant's proffered testimony that he was pressured <u>days after</u> his arrest to give information about a victim in a shooting would "cause confusion of issues, could mislead the jury and certainly, certainly [cause] undue delay. . . ."

When defendant later informed the judge that he wished to subpoena another witness on the same issue, the judge denied defendant's request and found the proffered evidence not relevant under N.J.R.E. 401 and N.J.R.E. 403. The judge explained to defendant:

> [DEFENDANT]: So basically you telling me that I'm supposed to defend myself based on the story that Elizabeth Police state that they found me in a vehicle allegedly holding two guns with my hands. They didn't mention any gloves that I had any gloves in my hands and they [didn't] extract any DNA or fingerprints from it. On top of that, they informed -- not allegedly. They did, in fact, inform the prosecutor's office to come speak to me as to being an informant to a crime where -- I put it like this. From the time that this homicide happened, if the State could prove that I was even in New Jersey, then I'm willing to just give up this argument.
>
> THE COURT: Well, the State doesn't have that burden. We're only talking about one particular day -- sir, to answer your question, I can't tell you what defense to present. It's up to you whether you testify and what you're going to testify to. But I am going to and I have established the parameters. You cannot talk about what was discussed in the prosecutor's office days after you were arrested.

11

[DEFENDANT]: It's my Sixth Amendment right to present my defense and also my Fifth Amendment right to testify.

THE COURT: That's right. Within parameters. There are rules we all have to follow. You, too. You promised you would.

[DEFENDANT]: So it has something to do with the case. It has something to do with the case. They mention the case. They mentioned that they would release me.

THE COURT: Yes, five days after you were arrested --

[DEFENDANT]: Four.

THE COURT: Thanks. You're splitting hairs, Mr. Mesadieu. If the discussion had occurred four days before, I would see your point a hundred percent. Then your point would be hey, look, you know what? They questioned me. I don't have any information. I'm not going to be an informant. And all of a sudden I got these guns planted on me. It didn't happen before. It happened after.

I don't see how it's relevant.

Because defendant was representing himself, the court took a larger role in explaining the relevance of proffered evidence. The judge did not abuse her discretion by limiting defendant's presentation of witnesses to support his theory

12

that the police fabricated evidence in retaliation for his post-arrest refusal to assist the police as an informant.

## II.

Defendant argues that the judge's grant of private counsel's motion to withdraw because of defendant's failure to pay legal fees prejudiced him and denied him his constitutional right to counsel of his choice. Although he initially objected to private counsel's motion due to the "time frame," defendant later withdrew the objection and refused counsel from the public defender's office.

"The decision whether to relieve counsel is committed to the sound discretion of the trial court, with a presumption against granting the request." State v. Biegenwald, 126 N.J. 1, 21 (1991); see also Jacobs v. Pendel, 98 N.J. Super. 252, 255 (App. Div. 1967) ("The granting of leave by the court is generally in the discretion of the court and depends upon such considerations as proximity of the trial date and possibility for the client to obtain other representation.").

"An attorney may withdraw for justifiable and lawful cause, after giving proper notice and obtaining leave of court." State v. Johnson, 274 N.J. Super. 137, 147 (App. Div. 1994). "Justifiable cause for an attorney's withdrawal includes the failure or refusal of a client to pay or secure the proper fees or

A-3524-16T4

expenses of the attorney after being seasonably requested to do so." Jacobs, 98 N.J. Super. at 255.

Private counsel moved to withdraw approximately six months before the start of trial, without objection from defendant. Defendant refused court-appointed counsel. The judge assigned stand-by counsel from the public defender's office as a safeguard. The judge's decision to allow retained counsel to withdraw was within her discretion and did not deprive defendant of an effective defense. His rejection of appointed counsel was his own, constitutionally protected, decision. See State v. King, 210 N.J. 2, 16 (2012).

## III.

Defendant argues that his right to a fair trial was violated when the judge denied his motion for a mistrial after the State disclosed a video after it had already rested. Defendant was arrested on December 13, 2014. On January 10, 2015, private counsel sent a notice to the Elizabeth Police Department requesting that the video recording of defendant's arrest be preserved.

Outside the presence of the jury, a sergeant from the Elizabeth Police Department Communications Division testified that he did not find a record of the defense preservation request. Ultimately, however, the sergeant's search

through records uncovered a video preserved by Internal Affairs, on an unrelated matter, that depicted defendant at the precinct.  This video was played in court.

Defendant argues that the judge should have declared a mistrial because had the video been disclosed prior to trial, it would have changed his defense. Quoting State v. DiTolvo, 273 N.J. Super. 111, 115 (Law Div. 1994), defendant maintains that he was prejudiced by the late disclosure, which violates New Jersey's reciprocal discovery rules, which seek "to prevent surprise, eliminate gamesmanship, and afford a party an opportunity to obtain evidence and research law in anticipation of evidence and testimony which an adversary will produce at trial."

"Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'"  State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)).  We "will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice."  State v. Jackson, 211 N.J. 394, 407 (2012) (quoting Harvey, 151 N.J. at 205)).  When deciding whether to grant a motion for a mistrial, a trial court considers the "unique circumstances of the case."  Smith, 224 N.J. at 47.  Where an appropriate alternative exists, such as "a curative

instruction, a short adjournment or continuance, or some other remedy," a mistrial may not be necessary. Ibid.

The judge gave defendant additional time during the trial to view the video and question the sergeant. In addition, defendant and his stand-by counsel argued on several occasions during summation that he was intoxicated, had no recollection of the incident, and that his body language in the video showed he was intoxicated. Defendant also pointed to a portion of the video where he leaned against a wall then bent over and said he must have been vomiting. Stand-by counsel argued that when you are drunk, "you can walk, you can talk, and then next morning you have no memory of what happened."

A mistrial should only be granted "to prevent an obvious failure of justice." Smith, 224 N.J at 7 (quoting Harvey, 151 N.J. at 205). In Smith, a woman was robbed at gunpoint and surrendered her purse with her cell phone inside to the robber. 224 N.J. at 38. The woman later identified Smith as the robber. Ibid. The Supreme Court reversed the defendant's conviction and held that a mistrial was warranted because information that the victim's cell phone was found on another person was disclosed during trial. Id. at 38-39. The Court found that this evidence "went to the heart of the defense" because the defendant maintained at trial that someone else committed the robbery. Id. at 50.

Similarly, our Supreme Court reversed and remanded for a new trial finding that the State violated the defendants' due process rights under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) when it "fail[ed] to produce nineteen discovery items until one week after the beginning of defendants' murder trial . . . ." <u>State v. Brown</u>, 236 N.J. 497, 502, 529 (2019). The withheld evidence was favorable to defendants because it supported the defense theory of third-party guilt and it was material to defendants' case because there was a "'reasonable likelihood' that the State's <u>Brady</u> violation, in light of the trial court's evidentiary rulings, affected the judgment of the jury . . . ." <u>Id.</u> at 519-20, 526-27 (quoting <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972)).

While it was unfortunate the video was discovered in the middle of trial, defendant had an opportunity to use it to his advantage at trial and its late discovery did not cause an obvious failure of justice. The late production of the video was not reasonably likely to have affected the verdict.

## IV.

Defendant argues that the warrantless search of his car violated his constitutional rights because an anonymous tip is insufficient to give the police reasonable suspicion that criminal activity is afoot, and when the police arrived at the parking lot, they did not have reasonable suspicion to conduct an

investigatory stop of defendant's parked car. The State's justification for the search was that the guns were in plain view of the officers who were rightfully standing outside the car.

When we review a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (quoting State v. Elders, 386 N.J. Super. 208, 228 (App. Div. 2006)). The United States Constitution and New Jersey Constitution guarantee the right of individuals to be free from unreasonable searches and seizures and require a warrant, supported by probable cause and an oath or affirmation, describe the place to be searched and items to be seized. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.

One exception to the warrant requirement is the plain view doctrine. State v. Johnson, 171 N.J. 192, 206-07 (2002). An officer may lawfully seize an item without a warrant when: (1) the officer is lawfully in the viewing area; (2) the officer discovers the evidence inadvertently;[3] and (3) it is immediately apparent that the item is associated with criminal activity. Ibid. Here, the officers were

---

[3]  On November 15, 2016, after defendant's arrest, the Supreme Court prospectively removed the inadvertence requirement from the plain view exception. State v. Gonzales, 227 N.J. 77, 82 (2016).

lawfully in the parking lot because they were responding to a call about a disorderly group. They approached defendant's illegally parked car, which was running with music blaring, and with the aid of flashlights saw through the car window the handguns on defendant's legs. Thus, the circumstances justified a plain view search and seizure of the guns.

V.

Defendant argues for the first time on appeal that Officer Benenati gave improper lay opinion testimony when he testified that he thought defendant might be under the influence of alcohol, but not totally inebriated based in part on his experience as a police officer and registered emergency nurse. Because this was raised for the first time on appeal, we apply a plain error standard. State v. Pressley, 232 N.J. 587, 593 (2018). Plain error is "[a]ny error or omission" that is "clearly capable of producing an unjust result . . . ." R. 2:10-2.

"If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701. This rule requires that lay opinion testimony be "based on an adequate foundation." State v. Bealor, 187 N.J. 574, 586 (2006) (quoting Neno v. Clinton, 167 N.J. 573, 585

19

(2001)).  As a result, "[a] lay witness may give an opinion on matters of common knowledge and observation."  Ibid. (alteration in original) (quoting State v. Johnson, 120 N.J. 263, 294 (1990)).  "Since 1924, because sobriety and intoxication are matters of common observation and knowledge, New Jersey has permitted the use of lay opinion testimony to establish alcohol intoxication."  Id. at 585; see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 2 on N.J.R.E. 701 (2018) (noting that a non-expert may testify about his or her observations of an individual's conduct or soundness of mind).

Defendant acknowledges that Officer Benenati offered "acceptable lay opinion" testimony when he testified that based upon his training and experience, he thought defendant may have been under the influence of alcohol or drugs.  Defendant, however, argues that the following expert testimony was inadmissible:

> [PROSECUTOR]:  Have you in the course of your time as an officer and a nurse seen people that are in that state?
>
> [WITNESS]:  Yes.
>
> THE COURT:  Which state though?
>
> [PROSECUTOR]:  State of unconsciousness or of total inebriation.
>
> [WITNESS]:  Yes.

[PROSECUTOR]: And what are some of the things that you observe those people doing?

[WITNESS]: They're not able to walk. Some of them aren't even able to talk. They certainly don't follow our commands. A lot of times they're vomiting, may have other complications going along with the vomiting.

The admission of this testimony did not amount to plain error.

Defendant maintained throughout trial that he was too intoxicated to remember what happened. He did not say he was unconscious. Stand-by counsel conceded that two handguns may have been found in defendant's car, but maintained the guns were not found resting on defendant's lap. She said that, while defendant could not remember what happened, he was certain the handguns were not his.

The judge instructed the jury pursuant to the model charge that it could "consider the evidence as to . . . defendant's consumption of alcoholic beverages in determining whether he was intoxicated to such a degree" that he was incapable of knowingly possessing the handguns. See Model Jury Charges (Criminal), "Intoxication Negating an Element of the Offense (N.J.S.A. 2C:2-8(a))" (rev. Oct. 18, 2005).

Officer Benenati's testimony that defendant did not appear to be as intoxicated as he claimed was not clearly capable of producing an unjust result.

21

His testimony did not interfere with the jurors' ability to use their common sense and experience to evaluate the extent of defendant's intoxication from the evidence.

VI.

Defendant argues that the prosecutor's statements during summation were improper and shifted the burden of proof to defendant. "The standard for reversal based upon prosecutorial misconduct is well-settled in the law. It requires an evaluation of the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial." State v. Timmendequas, 161 N.J. 515, 575 (1999). An appellate court will not reverse a conviction because of prosecutorial misconduct "unless the conduct was so egregious as to deprive defendant of a fair trial." Ibid.

The prosecutor said:

> And I'm going to get into a little bit of the defense case although I don't really know what there is to get into. But these facts are undisputed. There is no alternative explanation that's been offered to you. There's been speculation. There's been conjecture. The courtroom is no place for speculation.

When stand-by counsel objected to the prosecutor's comment, the judge instructed the jury that "defendant doesn't have any burden so he doesn't have to offer any alternative explanation." The prosecutor then stated:

22

Thank you, Judge. Let me clarify. The defendant is under no burden. However, when you are presented with facts and you are presented with a case, it needs to be substantiated. You can't come into a courtroom, drum up [a] conspiracy theory and ask a group of people to believe it. That's not how life works.

. . . .

What evidence in this case do you have to think that these officers had a motivation to do this to this individual?

. . . .

In order for you to find the defendant not guilty, you have to believe that these officers are professional liars . . . .

The judge instructed the jury that summations were not evidence. She said: "the statement of the [p]rosecutor that to find defendant not guilty you have to believe the officers are professional liars is not a correct statement of law."

The judge instructed the jury consistent with Model Jury Charges (Criminal), "Presumption of Innocence" (approved Oct. 26, 1992) and Model Jury Charges (Criminal), "Reasonable Doubt" (rev. Feb. 24, 1997):

The defendant has pled not guilty to the charge. The defendant is presumed to be innocent and unless each and every essential element of an offense charged is proved beyond a reasonable doubt, the defendant must be found not guilty of that charge.

The burden of proving each element of the charge beyond a reasonable doubt rests upon the State and that burden never shifts to the defendant. The defendant in a criminal case has no obligation or duty to prove his innocence or offer any proof related to his innocence.

The judge carefully instructed the jury to ignore the prosecutor's improper comments. We assume the jury listens to and follows the court's instructions. State v. Ross, 218 N.J. 130, 152 (2014). Defendant was not deprived of a fair trial by improper prosecutorial comments.

## VII.

Finally, defendant claims his sentence was excessive. We evaluate a court's sentencing determination using a deferential standard of review and must "not substitute [our] judgment for the judgment of the sentencing court." State v. Lawless, 214 N.J. 594, 606 (2013). We will affirm a sentence unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Defendant argues that even though he was statutorily eligible for an extended term, the judge's decision to impose the extended term resulted in an excessive sentence. The judge found aggravating factors three, risk of committing another offense; six, prior criminal record; and nine, the need for deterrence. N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge did not find any statutory mitigating factors. N.J.S.A. 2C:44-1(b). She stated:

> Now, I remember very clearly the testimony of the officer that he and his partner had to be very careful not to surprise, I guess, Mr. Mesadieu because they were concerned that since he had the guns on his lap and the fingers on the triggers that he might fire if he was startled, and they were very cautious about how they handled that situation.
>
> That is one of the most dangerous situations I can think of because, of course, it poses not just a risk of injury, but a risk that somebody could be killed.

The judge carefully followed the statutory sentencing guidelines and did not abuse her discretion. Having considered defendant's arguments in light of the record and prevailing law, we affirm defendant's convictions and sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3524-16T4