# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1067-19

STATE OF NEW JERSEY

    Plaintiff-Respondent,

v.

DARRYL SMITH,

    Defendant-Appellant.

_____

        Submitted October 25, 2021 – Decided November 17, 2021

        Before Judges Sabatino and Mayer.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 18-11-0995 and 18-11-0998.

        Joseph E. Krakora, Public Defender, attorney for appellant (Candace Caruthers, Assistant Deputy Public Defender, of counsel and on the briefs).

        Andrew J. Bruck, Acting Attorney General, attorney for respondent (Catlin A. Davis, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Darryl Smith appeals from judgments of conviction dated October 9, 2019. Specifically, he challenges denial of his motion for a mistrial based on statements uttered by a trial witness and various instances of prosecutorial misconduct during opening and closing statements. We affirm.

The following facts were adduced during defendant's trial for attempted sexual assault.

On August 29, 2018, defendant was found unconscious in Jersey City. The responding police officers called for an ambulance and defendant went to an area hospital. In diagnosing defendant's condition, the hospital staff determined defendant suffered an accidental drug overdose. Several hours after entering the hospital, defendant left without being officially discharged by the hospital.

After he left the hospital, defendant encountered a woman, D.C.,[1] on a street near the hospital. Defendant tackled D.C., held her down, and tried to spread her legs. During the attack, defendant tore D.C.'s dress and ripped D.C.'s underwear. While D.C. was screaming and fighting defendant, a man walked by and attempted to pull defendant off D.C. Defendant resisted until a second

---

[1] We refer to the victim by her initials pursuant to R. 1:38-3(c)(12).

 A-1067-19

man helped subdue defendant. After the men pulled defendant off D.C., defendant got up and "walked away like nothing ever happened."

D.C., accompanied by the two men, pursued defendant. D.C. followed defendant, seeking to identify her attacker by taking his photograph. D.C. also called 9-1-1.[2]

In response to the 9-1-1 call, the police arrived at the scene and arrested defendant. Defendant returned to the same hospital because the police believed defendant to be "under the influence of something." After being cleared by the hospital's medical staff, defendant was transported to the police station and charged with second-degree attempted sexual assault on D.C.

In an unrelated incident occurring the day before his attack on D.C., defendant admitted to arguing with another woman, S.S., and striking her in the face while wearing a ring. Defendant's ring left a wound on S.S.'s face, requiring stitches. Defendant was separately charged with second-degree aggravated assault and third-degree burglary stemming from the incident involving S.S.

---

[2] The State filed a motion to admit the 9-1-1 call. After a testimonial hearing, the judge granted the State's motion, allowing admission of the call at trial, subject to redactions not relevant to this appeal.

Defendant proceeded to trial on the attempted sexual assault charge involving D.C. The trial on the charges involving the attack on S.S. awaited the outcome of the trial on the charge involving defendant's attack on D.C.

D.C. testified at trial. She provided emotional testimony regarding defendant, telling the jury she was attacked by "this ugly piece of sh\*\*." Immediately following this remark, the judge instructed a court officer to remove the jury from the courtroom. When the jury left the courtroom, while D.C. remained seated at the witness stand, a representative associated with the victim assistance unit approached D.C. Within earshot of some jury members, the judge stopped the representative before she could reach D.C. The judge admonished the victim assistance unit representative and reminded her "[t]his is not the prosecutor's office" and she must "not to interfere when [the court is] on the record."

After excusing the jury, the judge sought counsels' advice regarding a curative instruction. Neither counsel offered any suggestions, leaving the judge to formulate his own curative instruction.

When the jury returned to the courtroom, the judge issued a curative instruction regarding D.C.'s outburst. The judge informed the jury the testimony might get emotional, but the jury must decide defendant's guilt or innocence based purely on the evidence and the law, not emotions. He emphasized to the

A-1067-19

jury that D.C.'s derogatory comment regarding defendant should not factor into the jury's final decision, reiterating the jury must focus on the evidence and the law. Neither counsel lodged any objection after the judge issued this curative instruction. On the record, the judge noted the jurors understood his instruction because all fourteen members of the jury shook their heads in assent to the judge's statements. The judge then declared a lunch recess.

After lunch, defense counsel moved for a mistrial based on D.C.'s derogatory statement regarding defendant. The judge denied the motion, finding his prompt curative instruction sufficiently cured any minimal prejudice caused by D.C.'s statement.

After four days of testimony, counsel presented closing arguments to the jury. During closing arguments, the prosecutor commented on D.C.'s demeanor during her 9-1-1 call to the police. Additionally, the prosecutor responded to defense counsel's challenges to the victim's credibility. Further, defendant claimed the prosecutor's closing statement belittled defendant's intoxication defense as an "excuse" for his crime and an effort to obtain a "free pass."

The jury found defendant guilty of attempted sexual assault. After the guilty verdict, the State extended a plea offer to defendant related to the charges in the other incident with S.S. On the second-degree aggravated assault charge, the State proposed reducing the charge to fourth-degree aggravated assault and

dismissing the remaining third-degree burglary charge. The State agreed to recommend imposition of an eighteen-month sentence to be served concurrently with the sentence for attempted sexual assault on D.C.

On October 7, 2019, consistent with the negotiated plea agreement, the judge sentenced defendant to an eight-year prison term for the attempted sexual assault on D.C. and a concurrent sentence of eighteen-months for the aggravated assault on S.S. Additionally, the judge ordered defendant follow the reporting and registration requirements under Megan's Law, N.J.S.A. 2C:7-1 to -23, prohibited any contact with the D.C. under Nicole's Law, N.J.S.A. 2C:44-8; and imposed Parole Supervision for Life, N.J.S.A. 2C:43-6.4.

On appeal defendant raises the following arguments:

POINT I

> REVERSAL IS REQUIRED BECAUSE THE COURT ERRONEOUSLY DENIED A MISTRIAL FOLLOWING AN EMOTIONAL OUTBURST BY THE VICTIM CALLING THE DEFENDANT AN "UGLY PIECE OF SH**" AND AN EMPLOYEE OF THE VICTIM ASSISTANCE UNIT RUSHING TOWARD THE WITNESS STAND.

POINT II

> RELATED INSTANCES OF PROSECUTORIAL MISCONDUCT DENIED DEFENDANT A FAIR TRIAL.

A-1067-19

A. The Prosecutor Impermissibly Argued Throughout Trial that the Jury Should Convict Defendant so that the Victim's "Strength" and "Tremendous Courage" in Confronting Defendant Would Not Be in Vain.

B. The Prosecutor Improperly Denigrated the Defense by Labeling the Defense of Intoxication as a Mere "Excuse" and Inaccurately Describing Attempt as a "Free Pass."

We review a trial court's denial of a motion for a mistrial for abuse of discretion. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019) (citing State v. Winter, 96 N.J. 640, 647 (1984)). We will not disturb a ruling on a mistrial motion "absent an abuse of discretion that results in a manifest injustice." State v. Smith, 224 N.J. 36, 47 (2016) (citing State v. Jackson, 211 N.J. 394, 407 (2012)). Whether inadmissible evidence presented to a jury warrants a mistrial or a cautionary instruction is "peculiarly within the competence of the trial judge." Winter, 96 N.J. at 646-47.

If there is "an appropriate alternative course of action," denial of a mistrial is within the trial court's discretion. State v. Allah, 170 N.J. 269, 281 (2002). Alternative courses of action include a curative instruction, short adjournment or continuance, or some other remedy that may provide a viable alternative to a mistrial. Smith, 224 N.J. at 47. "The same deferential standard that applies to the mistrial-or-no-mistrial decision applies to review of the curative instruction itself." Herbert, 457 N.J. Super. at 503 (citing Winter, 96 N.J. at 647).

7

In deciding a motion for a mistrial, a court should consider the following factors: (1) "the nature of the inadmissible evidence the jury heard, and its prejudicial effect"; (2) whether the instruction was issued swiftly and firmly; and (3) "tolerance for the risk of imperfect compliance" by a jury. Herbert, 457 N.J. Super. at 505-07. In electing to provide a curative instruction rather than granting a mistrial, judges are to presume a jury is "capable of following a curative instruction to ignore prejudicial matter." Williams v. James, 113 N.J. 619, 632 (1989).

Defendant argues the judge should have granted his motion for a mistrial because defendant was denied "due process and a fair trial." He contends D.C.'s outburst was so prejudicial no curative instruction would suffice.

For the first time on appeal, defendant also asserts the judge's curative instruction was flawed because the judge failed to instruct the jury to disregard the actions of the victim assistance unit representative in response to D.C.'s emotional outburst. He claims the judge admonished the representative while the jury was in the courtroom and the rebuke allowed the jury to "impermissibly speculate about what [the representative's] role might be." We reject both arguments.

The judge gave the following instruction to the jury:

things happen in life, right? People get emotional, people do not become emotional. . . . I see it every day. You're going to need to deal with that in this case. And you all heard what the charge [was] when you first walked through the door on Tuesday. Okay? You need to decide the case – I know it's going to be somewhat emotional, but you're going to need to do your best to decide the case based on . . . the evidence and the law. And even though there's emotion out there, you're going to need to put the emotion aside. Okay?

. . . .

Someone got emotional, that's fine. But the part about, you know, calling someone a name, you know, you can't consider that during deliberations. Okay? Everyone understands that? Very good.

I'm sure you all can put that aside and judge the case based just on the evidence and based on the law, correct? Okay. I have 14 heads shaking, so we'll take a little bit longer for lunch.

After the lunch recess, and before the jury returned to the courtroom, the judge provided a detailed recitation of the "tumult" that occurred prior to the recess in the event "the [A]ppellate [D]ivision is reading the record" in the future. On the record, with only counsel present in the courtroom, the judge stated

I think the witness became emotional. . . . I'm shrugging. I know this is not the video courtroom. That's not a problem, right? Witnesses become emotional, we'll deal with that. [The Appellate Division] may not understand the first part, and I say this respectfully, with what I was just talking about.

9

When I said, why don't we take the jurors out, the jurors were on their way but in the courtroom.

. . . .

. . . you have a terrific victim-witness assistance, but I can't have people coming up to the witness who's being very emotional and then I'm thinking in my mind are we going to have Michaels[3] type problems, like, is somebody going to start hugging the witness and the jurors are looking. And that was the [j]udge's reaction. Okay?

. . . because there was someone from the prosecutor's [office] . . . I don't think anybody planned anything. Something emotional happened and everybody just reacted. So, I don't think anybody was behaving in bad faith. . . . so the record's clear, that was more my issue.

Regarding the reaction of the victim assistant unit representative in response to D.C.'s outburst, the judge continued,

if I didn't put my finger up and say no, you're not a participant, she would have been up at the witness [stand]. I don't know what would have happened. Hopefully nothing.

. . . .

And she did not make it [to the witness stand] – and I'm not accusing anyone of doing anything nefarious. I don't think . . . that – not for one minute do I think that was anyone's intent. There was some emotion and there was a reaction. I probably would have had the same reaction. I understand, but no, she didn't make it

---

[3] State v. Michaels, 264 N.J. Super. 579, 615-16 (App. Div. 1993), aff'd on other grounds, 136 N.J. 299 (1994).

anywhere near [the witness], but I would dare – but I had to put my hand up and say no, stop, or whatever I said.

After the judge made this statement on the record, prior to the jury returning to the courtroom, defense counsel requested a mistrial based on D.C.'s outburst on the witness stand. Defendant's attorney argued "it was such a dramatic event and it certainly raises the possibility of this jury being tainted by her actions."

In denying the motion, the judge stated:

> If someone who believes they're the victim of an attempted sexual assault gives an angry outburst, do I understand? Of course I understand. But does my understanding overcome that there should be a mistrial or not in this matter? Okay.
>
> She's entitled to feel how she wants. She can be emotional. I mean, she could sit next to me and I could tell her, please don't be emotional. I don't think anybody in the room thinks that's going to work, right, with somebody . . . who has certain feelings . . . but . . . I'm not convinced at this point that there's been any prejudice at this point in time.
>
> I gave an instruction to the jurors. . . . I think I give mine a little bit less formal than some other judges and I kind of look at the 14 [jurors] and I say, you hear what I said? Everybody can do that . . . even though there's emotion in the courtroom, everybody can base this case on only the law and the facts and not your emotions? And the 14 of them shook their heads yes.

A-1067-19

We first consider defendant's claim the curative instruction was deficient because the judge did not address the actions of the victim assistance unit representative. However, defendant never raised the issue as part of his mistrial motion. If a party does not object or raise an issue at the trial level, we review the matter for plain error. State v. McKinney, 223 N.J. 475, 494 (2015); see R. 2:10–2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ."). An error will be disregarded unless "a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." State v. R.K., 220 N.J. 444, 456 (2015).

We perceive no error let alone plain here. Even if the jury recognized the victim assistance unit representative was part of the prosecution's team, defendant failed to articulate how the jury's verdict would have been different absent the representative's actions. While not directing his jury instructions specifically to the actions of the victim assistance unit representative, the judge emphasized the jury's decision must be based solely on the evidence and the law.

We next consider defendant's argument that a mistrial should have been granted because the curative instruction regarding D.C.'s outburst failed to cure the resulting prejudice. Here, the judge addressed the applicable factors in deciding the mistrial motion. D.C.'s outburst was minimized by the judge

A-1067-19

referring to her remarks as improper name calling and advised the jury on several occasions they were required to render a decision based solely on the evidence and the law. His instruction was issued swiftly and firmly. See State v. Vallejo, 198 N.J. 122, 134-35 (2009). After issuing the curative instruction, the judge noted each juror nodded, indicating their assent, when he asked if the jury understood his instruction regarding D.C.'s outburst. Based on the jurors' reaction, the judge correctly presumed the jury would follow his instruction. We are satisfied the judge properly exercised his discretion in denying defendant's mistrial motion.

Not only do we discern no abuse of discretion in the judge's denial of defendant's mistrial motion, but we commend the trial judge's handling of the situation. A judge who finds himself or herself in a situation involving an epithet uttered by an emotional witness during a trial, and the attendant circumstances following the utterance of curse words or other invective statements, would be well-served to follow Judge Mark J. Nelson's actions by addressing the situation calmly and deliberatively, and immediately issuing prompt instructions to the jury.

We next consider defendant's arguments regarding instances of prosecutorial misconduct during closing statements. Defendant advances four specific instances of misconduct: (1) the prosecutor inappropriately reminded

13

the jury about D.C.'s emotional outburst on the witness stand; (2) the prosecutor impermissibly made an emotional appeal to the jury, stating the jury should convict defendant so that D.C.'s "strength" and "tremendous courage" would not be in vain; (3) the prosecutor improperly expressed a personal opinion regarding D.C.'s character traits, violating the duty to refrain from expressing personal belief about the truth of the witness's testimony; and (4) the prosecutor denigrated defense counsel's closing argument by labeling the intoxication defense as an "excuse" and a "free pass." We disagree any of these statements by the prosecutor evidenced misconduct warranting a new trial.

Because defense counsel failed to object to the prosecutor's comments as prejudicial during the course of the trial, we review the issues for plain error. R.K., 220 N.J. at 456; R. 2:10-2. In addition to demonstrating the prosecutor's comments constituted error, defendant must demonstrate the possibility of an injustice flowing from the comments "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

"Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)). Prosecutors in criminal cases are expected to make

14

vigorous and forceful closing arguments to juries. State v. Williams, 244 N.J. 592, 607 (2021) (citing Frost, 158 N.J. at 82). "[A]s long as the prosecutor stays within the evidence and the legitimate inferences therefrom, [t]here is no error." Ibid. (second alteration in original) (internal quotation marks and citation omitted) (quoting State v. McNeil-Thomas, 238 N.J. 256, 275 (2019)).

As a general rule, it "is improper for a prosecutor to express his personal opinion on the veracity of any witness." State v. Rivera, 437 N.J. Super. 434, 463 (App. Div. 2014) (citing State v. Marshall, 123 N.J. 1, 154 (1991)). However, not all expressions of opinion are so inherently prejudicial to require a new trial. If defense counsel fails to object contemporaneously to the prosecutor's comments, "the reviewing court may infer that counsel did not consider the remarks to be inappropriate." State v. Vasquez, 265 N.J. Super. 528, 560 (App. Div. 1993) (citing State v. Johnson, 31 N.J. 489, 511 (1960)).

Applying these principles, we discern no plain error in the prosecutor's statements to the jury during closing argument.

Contrary to defendant's argument, the prosecutor did not refer to D.C.'s emotional comments on the witness stand during summation. The prosecutor simply told the jury "[y]ou saw [D.C.] testify yesterday." The prosecutor asked the jury to remember the harm suffered by D.C. based on her own testimony, describing defendant's attack, not the emotional outburst on the stand.

Nor did the prosecutor's comments about D.C.'s courage and strength rise to the level of plain error. During cross-examination and closing argument, defense counsel attacked D.C.'s credibility, attempting to cast doubt on various aspects of her testimony. The prosecutor's statements regarding D.C.'s courage in following defendant to provide a description to the police and her "strength" in testifying and confronting defendant at trial were intended to demonstrate D.C.'s credibility as a witness, not to inflame the jury. Moreover, the prosecutor's statements did not express a personal belief about D.C.'s strength and courage. He merely observed D.C. demonstrated strength by confronting her attacker in providing trial testimony and displayed courage by following her attacker to identify him to the police.

Even if the prosecutor impermissibly expressed a personal opinion about D.C.'s courage and strength, the references were too fleeting to constitute plain error. Where a prosecutor's remarks were "fleeting" and "accompanied by an appropriate charge by the trial judge instructing . . . that counsel's comments are not evidence," the remarks do not constitute plain error. State v. Jang, 359 N.J. Super. 85, 97 (App. Div. 2003).

The prosecutor's characterization of D.C. was fleeting, and the judge instructed the jury to disregard any perceived bias, passion, prejudice, or sympathy and to decide the case based solely on evidence. The judge expressly

stated "[a]rguments, statements, remarks, openings, and summations of counsel [were] not evidence and must not be treated as evidence." On this record, defendant failed to proffer any evidence the jury would have reached a different outcome had the prosecutor had not made these statements during closing argument.

We next examine defendant's claim the prosecutor's description of the intoxication defense as an "excuse" and a "free pass" constituted prosecutorial misconduct. Again, defense counsel did not object when the prosecutor made these statements during closing argument. Thus, we review the prosecutor's statements for plain error.

Here, the prosecutor correctly stated the law regarding attempted sexual assault several times during his closing argument. He told the jury the State has to prove that "defendant purposely took a substantial step towards the completion of an act of sexual penetration." In addition, defense counsel accurately stated the State's burden of proof during closing argument. More importantly, the judge instructed the jurors they were to follow his instructions and not be guided by any description of the law provided by either counsel.

Defendant's reliance on State v. Rodriguez, 365 N.J. Super. 38 (App. Div. 2003), in support of his argument is misplaced. In Rodriguez, the prosecutor repeatedly characterized the defendant's insanity defense as an excuse to avoid

17

a conviction for murder.  Id. at 49-52.  Here, the prosecutor's use of the word "excuse" on two occasions during closing argument was not as prejudicial or egregious as the statements by the prosecutor in Rodriguez.  We are satisfied the prosecutor's use of the words "excuse" and "free pass" did not constitute plain error as there was overwhelming evidence in this case to support the jury's guilty verdict.

Because we reject each of the errors raised by defendant on appeal, we conclude there were no cumulative errors entitling defendant to a new trial. Even where a defendant alleges several trial errors, "the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014).

To the extent not addressed, we determine defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18