949 A.2d 208

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. LUIS GARCIA, DEFENDANT–APPELLANT.

Argued February 19, 2008—Decided June 18, 2008.

194

*Jacqueline E. Turner,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*James L. McConnell,* Assistant Prosecutor, argued the cause for respondent (*Wayne J. Forrest,* Somerset County Prosecutor, attorney).

Justice ALBIN delivered the opinion of the Court.

In this appeal, the primary issues are whether the trial court erred in refusing to enforce a court order requiring a county

correctional facility to produce an inmate to testify for the defense in a criminal trial, and whether defendant was denied his constitutional right to present a defense.

A week before the start of defendant Luis Garcia's criminal trial, a Superior Court judge granted his request for the issuance of an order to secure the presence of an inmate to testify at his trial. On the first day of the two-day trial, defense counsel brought to the court's attention that the correctional facility had not transported the inmate-witness to the courthouse. The trial judge was not the same judge who signed the transport order for the prisoner. The trial judge disclaimed responsibility for securing the inmate, laying the burden on defendant to produce the witness. The next day, when defendant was to present his case, the trial judge refused to grant an adjournment to allow defendant to arrange to have the inmate brought to court. Defendant rested without calling any witnesses, and the jury returned a guilty verdict on all charges. The Appellate Division affirmed his conviction and sentence.

We now hold that the trial court abused its discretion in not granting an adjournment for the purpose of enforcing the order for the production of the defense witness from a correctional facility. We remand to the trial court for a hearing at which defendant will be given the opportunity to call the witness. At that hearing, if the witness gives testimony that would have been favorable to defendant at his trial, defendant's conviction must be reversed and a new trial granted.

## I.

### A.

A Somerset County grand jury returned two indictments against defendant Garcia, relating to events that unfolded on January 9, 2003. In the primary indictment, defendant was charged with second-degree conspiracy to commit armed burglary, *N.J.S.A.* 2C:5–2, 2C:18–2(a)(1), and 2C:18–2(b)(2); second-degree

attempted armed burglary, *N.J.S.A.* 2C:5–1, 2C:18–2(a)(1), and 2C:18–2(b)(2); third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b); second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(a); and fourth-degree possession of hollow nose bullets, *N.J.S.A.* 2C:39–3(f). In a separate indictment, he was charged with second-degree possession of a weapon by a convicted person, *N.J.S.A.* 2C:39–7(b)(1).[1] At defendant's two-day jury trial, the State called as witnesses Sergeant Edward Byrnes and Detective Stephen Elder of the Bernards Township Police Department, who gave the following account.

On January 9, 2003, at approximately 11:30 p.m., Sergeant Byrnes was on patrol when he observed a Ford Focus with four occupants parked on a residential street in Bernards Township. Sergeant Byrnes's suspicions were aroused, in part, because the township recently had suffered a spate of burglaries. The sergeant also took note that the car had stopped an unusual distance from a stop sign, that one of the passengers ducked down as he drove by, and that when the Focus pulled away from the curb, its rear license plate light was out. Based on those observations, the sergeant activated his lights and initiated a motor vehicle stop.

When he approached the vehicle and asked the driver, Jennifer Noda, for her credentials, she appeared nervous and avoided eye contact with him. The sergeant also thought it odd that the three passengers—Carlos Marquinez, Esteban Ramirez, and defendant—stared straight ahead as he engaged the driver in dialogue. Additionally, a temporary registration sticker on the rear window of the car indicated that the registration was due to expire at midnight. During the traffic stop, Sergeant Byrnes received information about an unrelated matter involving the driver and took her into custody. He then engaged the passengers in conversation and directed them to exit the car. Upon opening the rear door of the vehicle, Sergeant Byrnes observed a handgun on

---

[1] While awaiting trial, defendant was also indicted for committing a third-degree aggravated assault on a corrections officer, *N.J.S.A.* 2C:12–1(b)(5)(a).

the floor by defendant's feet. The sergeant immediately drew his gun and ordered the backseat passengers to place their hands on the seats in front of them. At that point, defendant volunteered that the fully loaded .38 caliber revolver on the floor was his weapon.

The car's four occupants were placed under arrest and later transported to police headquarters. There, defendant was given his *Miranda* warnings.[2] Under questioning by Sergeant Byrnes and Detective Elder, defendant confessed that he and the car's other occupants planned to break into homes with the intention of stealing cash and jewelry. Defendant admitted that he possessed the gun, but emphasized that Marquinez was the ringleader and had brought him into the scheme.

### B.

With that testimony, the State concluded its case on the first day of trial. Before the proceedings adjourned that day, defense counsel reminded the court that the defendant intended to call Marquinez—then an inmate in the Hudson County Correctional Center—as a witness and that a transport order had been issued for Marquinez's attendance. Marquinez already had pled guilty to conspiracy to commit armed burglary and attempted armed burglary, and had agreed to "give truthful testimony against codefendants."

The court made it clear that it would not brook delay and that defense counsel bore "primary responsibility" for getting Marquinez to the courthouse. Defense counsel assured the court that he had done everything in his power to arrange for Marquinez's appearance and that the only question was whether the Hudson County authorities would comply with the transport order.

The next morning, as the defense readied to present its case, Marquinez had not been produced from the Hudson County jail.

---

[2] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

The court then permitted defense counsel to explain the reason for the witness's absence. Counsel represented that he had subpoenaed Marquinez to appear on the first day of trial. To secure Marquinez's attendance, counsel had obtained a transport order a week earlier, signed by another Somerset County judge, and sent it to the Hudson County authorities. Those authorities told counsel's secretary that they had transported Marquinez to Somerset County earlier in the week, but that obviously was not the case. Defense counsel further explained his powerlessness over the situation:

> [T]he bottom line is Hudson County has apparently had this Order and not complied with it. It is not [defendant's] fault that Hudson County has not complied with the Order. Likewise, it's not even Marquinez's fault.
>
> ... Mr. Marquinez does not control whether or not he appears. Hudson County does, and they have not complied.... I would like to have some opportunity to get him on the stand and present the evidence that I can get from him.

The court insisted that "it was [defense counsel's] responsibility to ensure that Mr. Marquinez would be here for the trial, as if he were any other witness," inside or outside of jail. Counsel resignedly responded, "I can get only what I can get from people that run the Hudson County Jail. They won't release him to me." The court was not persuaded, noting that Hudson County had advised Somerset County's "Criminal Case Management that it was up to the defense counsel to pay for transmittal of an inmate from the Hudson County Jail." Counsel stated that even if that were so, Hudson County had never told him about his responsibility for the transportation costs. With those final words, the court decided to proceed with the trial despite Marquinez's absence. On the heels of that decision, the defense rested without calling any witnesses.

## C.

After summations and the court's instructions on the law, the jury returned guilty verdicts on all charges in the primary indictment. The same jury remained impaneled to decide in a second trial whether defendant was guilty of possession of a weapon by a

convicted person, the charge contained in the secondary indictment.[3] The jury convicted defendant of that charge as well.

The court sentenced defendant to concurrent seven-year terms of imprisonment for conspiracy to commit armed burglary, attempted armed burglary, and possession of a weapon for an unlawful purpose, and imposed an eighty-five percent parole disqualifier in accordance with the No Early Release Act, *N.J.S.A.* 2C:43–7.2. The court also imposed a concurrent eighteen-month term for possession of hollow nose bullets, and merged the unlawful possession of a weapon conviction with the possession of a weapon for an unlawful purpose conviction.[4] Finally, the court sentenced defendant to another concurrent seven-year term for possession of a weapon by a convicted person, and imposed the applicable fines and penalties.[5]

## D.

In an unpublished opinion, the Appellate Division rejected defendant's claim that the trial judge abused his discretion by not

---

[3] Jury deliberations regarding the two indictments were bifurcated because a fact essential to the charge contained in the secondary indictment—defendant's prior conviction for an offense that disqualified him from possessing a firearm under *N.J.S.A.* 2C:39–7(b)(1)—was impermissible other-crime evidence in the trial of the primary indictment. *See N.J.R.E.* 404(b); *State v. Ragland,* 105 *N.J.* 189, 193, 519 A.2d 1361 (1986) (requiring that, when defendant is charged with violation of *N.J.S.A.* 2C:39–7(b)(1) and other crimes, "[t]he two charges must be tried separately since proof that defendant was a convicted felon ... clearly tends to prejudice the jury").

[4] We recently reiterated that merging unlawful possession of a firearm, *N.J.S.A.* 2C:39–5(b), into possession of a firearm for an unlawful purpose, *N.J.S.A.* 2C:39–4(a), is improper, because the 2C:39–5(b) crime involves a distinct factual element—failure to obtain a permit to carry a firearm. *State v. O'Neill,* 193 *N.J.* 148, 163 n. 8, 936 A.2d 438 (2007); *see also N.J.S.A.* 2C:1–8(a) (governing merger of offenses).

[5] Defendant pled guilty to the indictment charging him with assault on a corrections officer and received a four-year term to run concurrent with the sentences already mentioned.

continuing the trial until Marquinez was produced from the Hudson County jail. Although the appellate panel accepted that defendant was entitled to "a reasonable period of time to effect service of process and obtain compliance therewith," *State v. Bellamy,* 329 *N.J.Super.* 371, 378, 748 *A.*2d 106 (App.Div.2000), it found nothing in the record suggesting that the testimony of "codefendant Marquinez would be part of defendant's viable defense strategy." For that reason, the panel concluded that the trial court was not required to grant an adjournment.

The panel specifically noted that "defense counsel never gave the trial court a proffer of the substance and relevance of the testimony" expected from Marquinez. It also underscored that Marquinez was the moving force behind the planned burglaries and had agreed "to testify as a witness for the State against defendant" as part of a plea agreement with the State. The panel determined the trial court did not err because "if [Marquinez's] testimony as a defense witness deviated in any material way from the factual basis he gave in support of his guilty plea, the State would have reasonable grounds to either vitiate Marquinez's plea agreement, or consider charging him with perjury." On that basis, it affirmed defendant's convictions. The Appellate Division also rejected defendant's argument that his sentence was excessive.

We granted defendant's petition for certification. 190 *N.J.* 395, 921 *A.*2d 448 (2007).

## II.

Two interrelated issues are raised in this appeal—the right of a criminal defendant to compel the appearance of witnesses on his behalf and the authority of a trial court to manage a criminal proceeding. We begin by addressing those competing interests.

Both the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee to the accused the right "to have compulsory process

for obtaining witnesses in his favor." That guarantee provides a criminal defendant with nothing less than " 'a meaningful opportunity to present a complete defense.' " *State v. Garron*, 177 *N.J.* 147, 168, 827 *A.*2d 243 (2003) (quoting *Crane v. Kentucky*, 476 *U.S.* 683, 690, 106 *S.Ct.* 2142, 2146, 90 *L.Ed.*2d 636, 645 (1986)), *cert. denied*, 540 *U.S.* 1160, 124 *S.Ct.* 1169, 157 *L.Ed.*2d 1204 (2004). Indeed, the right of an accused to present witnesses in his own defense " 'is a fundamental element of due process of law.' " *Taylor v. Illinois*, 484 *U.S.* 400, 409, 108 *S.Ct.* 646, 653, 98 *L.Ed.*2d 798, 810 (1988) (quoting *Washington v. Texas*, 388 *U.S.* 14, 19, 87 *S.Ct.* 1920, 1923, 18 *L.Ed.*2d 1019, 1023 (1967)); *see also State v. Sanchez*, 143 *N.J.* 273, 290, 670 *A.*2d 535 (1996) (" '[F]ew rights are more fundamental than that of an accused to present witnesses in his own defense.' " (quoting *Chambers v. Mississippi*, 410 *U.S.* 284, 302, 93 *S.Ct.* 1038, 1049, 35 *L.Ed.*2d 297, 312 (1973))).

■ The United States Supreme Court has recognized that the Compulsory Process Clause is a necessary corollary to a fair trial.
> "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."
>
> [*Taylor, supra*, 484 *U.S.* at 408–09, 108 *S.Ct.* at 653, 98 *L.Ed.*2d at 810 (quoting *United States v. Nixon*, 418 *U.S.* 683, 709, 94 *S.Ct.* 3090, 3108, 41 *L.Ed.*2d 1039, 1064 (1974)).]

Criminal defendants possess not only the right to call witnesses, but also " 'the right to the government's assistance in compelling the attendance of favorable witnesses at trial.' " *Id.* at 408, 108 *S.Ct.* at 652, 98 *L.Ed.*2d at 810 (quoting *Pennsylvania v. Ritchie*, 480 *U.S.* 39, 56, 107 *S.Ct.* 989, 1000, 94 *L.Ed.*2d 40, 56 (1987)).

■ The right to compulsory process, however, is not absolute, and " 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *Garron, supra*, 177 *N.J.* at 169, 827 *A.*2d 243 (quoting *Chambers, supra*, 410

*U.S.* at 295, 93 *S.Ct.* at 1046, 35 *L.Ed.*2d at 309). Certainly, a defendant does not have a right to call a witness who will offer irrelevant testimony. *See Crane, supra,* 476 *U.S.* at 689–90, 106 *S.Ct.* at 2146, 90 *L.Ed.*2d at 644. The right to compulsory process, moreover, does not mean that a defendant may violate with impunity rules of court that require the production of a witness list, or that he may issue a subpoena, for a witness long known to him, so late in a criminal trial that a significant delay in the proceedings will be incurred. *See Taylor, supra,* 484 *U.S.* at 401–02, 108 *S.Ct.* at 649, 98 *L.Ed.*2d at 806 (holding that trial court's preclusion of witness because defense did not identify witness in pretrial discovery did not violate defendant's Sixth Amendment rights); *see also Sanchez, supra,* 143 *N.J.* at 291, 670 *A.*2d 535 ("[N]either our Rules Governing Criminal Practice nor the Constitution gives a defendant the absolute right to elicit testimony from any person he may desire.").

Thus, this constitutional right must be exercised in accordance within the reasonable case management prerogatives possessed by our trial courts, which are charged with the fair and efficient operation of our criminal justice system. Our courts must strike a fair and careful balance between honoring the constitutional right to compulsory process, which is integral to ensuring a fair trial, and the interest in the effective administration of a criminal trial. *See Bellamy, supra,* 329 *N.J.Super.* at 378, 748 *A.*2d 106 ("[W]hen balancing a short delay in the start of trial against [a] defendant's legitimate ability to present a viable defense ... the integrity of the criminal process must prevail over the administrative disruption.").

We now apply those principles to the facts before us.

### III.

#### A.

This is not a case of a defendant unexpectedly threatening to disrupt and delay the orderly process of a criminal trial through

the belated exercise of the right to compulsory process. Here, in advance of trial, defendant issued a subpoena for the attendance of Marquinez, who was lodged in the Hudson County jail. A week before trial, defense counsel secured a transport order from a Superior Court judge for the production of the witness and served it on the appropriate Hudson County authorities. By dint of that order, Marquinez was due to be delivered to the Somerset County courthouse on the first day of trial. Defense counsel represented to the court that Hudson County officials mistakenly informed his secretary that Marquinez in fact had been transported to Somerset County. Although it was the court's understanding that defendant had to pay the costs of the inmate's transportation in advance, no one had told defense counsel that he was obliged to do so.[6] Counsel undoubtedly was prepared to foot the minimal statutory fee to cover the transportation costs.[7] Additionally, defense counsel was not tardy in bringing the problem to the attention of the court at the end of the first day of the two-day trial.

We cannot find fault with the diligent efforts of defense counsel. The Hudson County authorities, who had custody of Marquinez, were obliged to obey the court's order to produce the witness. Enforcement of that order was beyond defendant's control. Ultimately, the court is responsible for ensuring that its duly issued orders are honored. To that end, the court is armed with the power to hold those in willful disobedience of its commands in contempt. *See N.J.S.A.* 2A:10–1(c) (permitting punishment for

---

[6] In a brief filed with this Court, defendant's appellate counsel avers—with citations to the record—that defendant was represented at trial by assigned counsel and thus, as an indigent, should not have been responsible for transportation costs. However, not only do those record citations not support the assertion that he was represented by assigned counsel, but the presentence report indicates that he was represented by a privately retained attorney.

[7] *N.J.S.A.* 22A:4–11 establishes the statutory fee owed to a sheriff or other authorized official for transporting a prisoner in response to compulsory process: $0.10 per mile. We take judicial notice that the Hudson County jail is less than forty miles from the Somerset County courthouse.

contempt in case of "[d]isobedience or resistance by ... any person whatsoever to any lawful writ, process, judgment, order, or command of the court"); *N.J.S.A.* 2A:10–6 (defining penalty for "[a] sheriff or other officer to whom any writ, process, judgment or order of the Superior Court is directed or delivered, who shall be adjudged in contempt of the court for failure to make return thereof or thereto").

Here, one governmental agency was prosecuting defendant on criminal charges while another was disobeying a court order to produce a witness in its custody, who had been subpoenaed by the defense. On the record before us, it is impossible to say whether the problem arose from Hudson County's neglect or willful disobedience of the order. Whatever the reason, instead of blaming defense counsel, who was powerless to overcome official intransigence, the court should have compelled the Hudson County jailers to produce Marquinez at trial in accordance with the order it had issued.[8] A simple telephone call from the court to the appropriate Hudson County official might have resolved the issue. We therefore conclude that the trial court abused its discretion by not briefly adjourning the trial until it enforced its order for the production of the defense witness.

### B.

We next must determine whether the court's failure to compel Marquinez's attendance violated defendant's Sixth Amendment and Article I, Paragraph 10 rights, or whether the error was "'harmless beyond a reasonable doubt.'" *State v. Castagna,* 187 *N.J.* 293, 312, 901 *A.*2d 363 (2006) (quoting *Chapman v. California,* 386 *U.S.* 18, 24, 87 *S.Ct.* 824, 828, 17 *L.Ed.*2d 705, 710–11 (1967)). Whether defendant was deprived of his constitutional right to "'a meaningful opportunity to present a complete defense'" depends on the testimony that Marquinez would have

---

[8] It makes no difference that a judge other than the one who presided at trial issued the transport order.

given had he been called to the stand. *Garron, supra,* 177 *N.J.* at 168, 827 *A.*2d 243 (quoting *Crane, supra,* 476 *U.S.* at 690, 106 *S.Ct.* at 2146, 90 *L.Ed.*2d at 645).

Unfortunately, the record does not reveal the essence of the testimony that was expected from Marquinez. For the purpose of appellate review, defendant should have made a proffer of Marquinez's intended testimony. *See R.* 1:7–3 (permitting proffers); *see also State v. Millett,* 272 *N.J.Super.* 68, 100, 639 *A.*2d 352 (App. Div.1994) ("The best technique is to make the offer of proof and preserve the record of excluded evidence in some more formal manner, either by testimony, if possible, or an affidavit or certification, or by preserving the proposed witness's written or adopted statement in the record by marking it for identification."). Clearly, Marquinez had relevant testimony to offer—he was arrested with defendant, pled guilty to criminal offenses related to the planned burglaries in Bernards Township, and was identified by defendant as the group's ringleader. The key question is whether Marquinez's testimony would have proven favorable to defendant. In his summation, defense counsel claimed that defendant had abandoned the plan to break into homes in Bernards Township. Marquinez, arguably, would have been able to shed light on that defense.

Although one might assume that a witness called by defendant would be of some assistance to the defense, we do not know the content of Marquinez's expected testimony and will not speculate that it would have been favorable. Nor will we speculate, as did the Appellate Division, that his testimony would have been unfavorable. It is true that in his plea agreement with the State, Marquinez agreed to provide truthful testimony at defendant's trial. However, the State did not call Marquinez as a witness, and the factual basis that he provided for his plea is not part of the record. Even assuming, as the Appellate Division did, that Marquinez's factual basis implicated defendant in the burglaries, Marquinez might have recanted the statements given at the time of his plea.

As we noted in *State v. Feaster*, 184 *N.J.* 235, 877 *A.*2d 229 (2005), "[t]he annals of the criminal law are filled with countless examples of witnesses who have recanted their trial testimony, despite the potential jeopardy in which they have placed themselves." *Id.* at 261, 877 *A.*2d 229. Although the State may have a right to retract Marquinez's plea agreement and charge him with perjury if his testimony is ultimately shown to be untruthful, as suggested by the Appellate Division, the jury nonetheless is the final arbiter of credibility and decides whether any "favorable" testimony deserves to be credited. In our adversarial system of justice, the defendant gets to choose whom to place on the stand, provided the witness can offer relevant testimony. *See Bellamy, supra,* 329 *N.J.Super.* at 377, 748 *A.*2d 106 ("It is no answer at all to say defendant would have been convicted anyway. He is entitled to a fair opportunity to present his best defense and to engender a reasonable doubt as to his guilt.").

Because of defendant's failure to outline Marquinez's expected testimony in a proffer, we must remand to the trial court for a hearing at which defendant will be given the opportunity to call Marquinez as a witness. If the court concludes that Marquinez's testimony would have been favorable to defendant, then defendant will have shown that his constitutional right to compulsory process was violated. In that case, defendant's convictions must be vacated and a new trial granted. On the other hand, if the court determines that Marquinez's testimony would not have advanced any viable defense, then the court may find that his absence from trial was " 'harmless beyond a reasonable doubt' " and allow his convictions to stand. *Castagna, supra,* 187 *N.J.* at 312, 901 *A.*2d 363 (quoting *Chapman, supra,* 386 *U.S.* at 24, 87 *S.Ct.* at 828, 17 *L.Ed.*2d at 710–11).[9]

---

[9] In the event that Marquinez cannot be found, the jury verdict must remain in place. That result follows because defendant never made a proffer that Marquinez would have given favorable testimony.

The approach outlined here is similar to one we took in *State v. Smith*, 36 *N.J.* 307, 177 *A.*2d 561 (1962). In that case, the jury rejected the defendant's alibi defense and convicted him of armed robbery. *Id.* at 308, 177 *A.*2d 561. "At the trial two important witnesses, who allegedly would [have] corroborate[d] the defense, failed to appear." *Ibid.* The defendant argued that the trial court's assistance was woefully "inadequate" to ensure the appearance of the witnesses. *Ibid.* Because the record was "barren of any proof in the form of testimony or affidavits as to what the witnesses would have said if produced at the trial," we found no basis "for an attack on the legal propriety of the conviction." *Ibid.* We allowed the defendant, however, "to apply for a new trial" and to make a proper record. *Ibid.*

In contrast to the present case, we did not suggest in *Smith* that the trial court had failed to properly assist in the procurement of the witnesses. *See id.* at 308–09, 177 *A.*2d 561. Indeed, the defense did not raise the issue of calling the alibi witnesses until "the fourth and final day of trial." *State v. Smith*, 66 *N.J.Super.* 465, 467, 169 *A.*2d 482 (App.Div.1961), *aff'd*, 36 *N.J.* 307, 177 *A.*2d 561 (1962). Moreover, the defendant did not timely subpoena his witnesses, *ibid.*, and the court had not issued an order, such as here, that required a correctional facility to produce a witness in its custody, *see Smith, supra*, 36 *N.J.* at 308–09, 177 *A.*2d 561; *Smith, supra*, 66 *N.J.Super.* at 467–69, 169 *A.*2d 482. Therefore, the facts before us present even more compelling grounds for the remedy we grant today.

## IV.

■ We find no merit in defendant's argument that his sentence was excessive. The trial court found three aggravating factors (risk of recidivism, prior criminal record, and need to deter) and no mitigating factors. *See N.J.S.A.* 2C:44–1(a)–(b). Defendant has made no cogent challenge to those findings. In particular, we note that defendant's adult criminal record indicates two convictions, one for second-degree robbery and one for pos-

session of a controlled dangerous substance with intent to distribute in a school zone. We cannot conclude that defendant's aggregate sentence of seven years imprisonment for second-degree crimes was so wide of the mark "that it shocks the judicial conscience." *State v. Roth*, 95 *N.J.* 334, 364, 471 *A.*2d 370 (1984); *see also N.J.S.A.* 2C:43–6(a)(2) (setting range of five to ten years imprisonment for second-degree crimes).

## V.

In summary, defendant's constitutional right to present witnesses in his defense included the right to call a witness lodged in the Hudson County jail. In advance of trial, defendant issued a subpoena and obtained a court order compelling the production of the witness. Defense counsel exhausted his efforts to secure the presence of the witness from the jail. Enforcement of the order required an exercise of authority by the court. The trial court's failure to briefly recess the trial to enforce that order constituted an abuse of discretion.

Because the record before us does not indicate the testimony that the witness would have offered had he been called to the stand, we cannot determine whether the trial court's failure to adjourn the trial until the witness was produced amounts to a constitutional violation and entitles defendant to a new trial. Accordingly, we remand this matter to the trial court for proceedings consistent with this opinion. Defendant must be provided the opportunity to establish whether the witness would have given favorable testimony. If the court determines that the witness's testimony would have been favorable, a new trial must be ordered.

*For remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.