**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0667-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL G. JOHNSTON,

    Defendant-Appellant.

_____

> Submitted January 14, 2025 – Decided June 25, 2025
>
> Before Judges Gilson, Bishop-Thompson, and Augostini.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 21-12-0856.
>
> Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Austin J. Howard, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> William A. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following his convictions and sentences, defendant Michael G. Johnston appeals, contending the trial court made numerous evidentiary errors, which deprived him of a fair trial. Defendant argues the trial court erred by preventing his counsel from arguing a self-harm theory defense during summation. Defendant further contends the court allowed the prosecutor to make improper remarks during his opening statement and during the cross-examination of defendant. After a review of the contentions in light of the facts and applicable law, we affirm.

I.

In December 2021, defendant was indicted on charges of second-degree aggravated assault—serious bodily injury (SBI), N.J.S.A. 2C:12-1(b)(1) (count one); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four).

The foundation of the State's case relied on the testimony of I.M. (Irvin),[1] who recounted that an incident took place outside a bar in Rahway on August

---

[1] We use initials and a fictious name for the victim to protect his privacy interests. R. 1:38-3(c).

30, 2021, shortly after the bar closed at 1:00 a.m. Defendant, along with other bar patrons, gathered in various areas of the parking lot to continue socializing and finish their drinks.

Defendant, his wife, M.J. (Mia), and a group of women stood near an SUV as Irvin walked past them on his way to his car. Irvin said: "What are you bar hoes looking at." He then entered his car. Before Irvin drove away, defendant tapped on his car window. Irvin rolled down the window, saw defendant holding a knife, and felt scared. Defendant demanded that Irvin apologize to the women, but he refused. Defendant responded: "Either you're going to go say sorry or you're not going to make it home tonight."

Irvin stepped out of his car in an effort to "de-escalate the situation" and "reason" with defendant. Defendant once again demanded that Irvin apologize, and he again refused. Defendant approached Irvin and "nicked" his neck with a knife. Irvin described feeling the "bleeding," the "puncturing [of his] skin," the "blood overflowing [onto his] skin," "stinging," and "numb[ness]." Irvin further explained that he sustained a defensive wound on his left wrist after he "deflected" defendant off him and the knife "slashed" his wrist. A cigarette defendant had been smoking fell onto Irvin's face and burned him near his eye. As a result of the injuries, Irvin has a permanent scar on his neck.

A-0667-22

The altercation was captured by a surveillance camera located some distance away across the parking lot. Although the video footage had been enhanced, it was difficult to discern specific details. The video did not show a knife, any cutting, or blood on Irvin's shirt. No knife was found in the parking lot.

When defendant and Irvin approached the group of women, Irvin heard one woman call defendant "Mike." One of the women also said: "Oh, [defendant], did you slash him?" Defendant responded: "Yeah, nobody messes with my girls." Irvin replied: "Don't worry about it, ladies, have a good one."

While driving to his home in Rahway, Irvin saw a Rahway Police Department (RPD) car parked in the CVS parking lot, about a block from the bar. He stopped in front of the police car, exited his car, and told officers about the incident in the bar parking lot. He also stated that he had broken up with his girlfriend.

Irvin was subsequently transported to the hospital by ambulance and also shared with emergency medical technicians (EMTs) that he had recently broken up with his girlfriend. On the way to the hospital, Irvin told the EMTs that he wanted to get out of the ambulance and "smoke."

The State also presented the testimony from the emergency department attending physician (ED physician) with a subspecialty in medical toxicology, who was qualified as an expert in emergency medicine. The ED physician testified Irvin's medical records, which were admitted into evidence, showed that he was asked about suicidal ideation as part of the "standardized" nursing questions and screening. Irvin denied any suicidal behavior or suicidal thoughts.

Irvin appeared clinically "slightly" intoxicated and had admitted to using alcohol and cannabis earlier that evening. He reported that he had been involved in an altercation outside a bar and sustained injuries from a pocketknife. About 2:47 a.m., Irvin was admitted as a "trauma activation"—"slash injury to the neck." The ED physician observed "an eight-inch slash wound" that was "actively bleeding" on the right side of Irvin's neck, which required two types of stiches because the wound went below the epidermis and the dermis. He also observed a "four-inch laceration with less bleeding" on the left side of his neck, and a "superficial about one inch injury more of like a cut" on the left wrist. Irvin was monitored in the emergency department and subsequently discharged after he was re-evaluated as "clinically sober," and a family member arrived to take him home.

A-0667-22

Later that day, Irvin provided a video statement to RPD detectives about the bar altercation. Irvin also testified that he met with the prosecutor a "few times" to prepare for the trial. During the initial meeting, he was "under the impression" that he had a knife in his car. Four days before trial, during an interview, Irvin stated for the first time that he might have had a folding knife in his car at some point. However, later in the interview, he stated that he was mistaken. At trial, Irvin testified that he did not have a knife in his car, his hand, or in his pocket on the night of the bar altercation.

On cross-examination, defense counsel asked whether Irvin felt scared when he was interviewed for trial preparation about four days before trial. Following the State's objection, and during a sidebar conference, the court and counsel reviewed a report that is not part of the appellate record. The court sustained the State's objection, finding it did not see "any aspect of fear" in the report. The court ruled defense counsel could not "inject the aspect of perjury" because there was no evidence of perjury.

The court determined that Irvin's inconsistent statements were "fair game," which could be explored during cross-examination. Defense counsel, however, was limited to asking, "did you mislead the police" and "did you withhold information." The court offered to excuse the jury and conduct a

N.J.R.E. 104 hearing. Defense counsel did not request the court conduct the Rule 104 hearing and did not object to the restrictions imposed on questioning Irvin. Instead, counsel proceeded to ask Irvin more questions about his inconsistent statements.

Defendant presented testimony from Mia to support his self-harm theory that Irvin was "depressed" due to his recent breakup with his girlfriend. Mia testified that while sitting at the bar, Irvin said he and his girlfriend had "split up" and that he "felt like his life was over."

Mia also testified that while in the parking lot, Irvin called the women "whores" and "sluts." She did not hear anyone ask defendant about slashing Irvin, nor did she notice any blood on Irvin or any wound to his neck. Mia testified that shortly after Irvin apologized, she and defendant left the parking lot.

Defendant provided testimony in his own defense. He admitted to approaching Irvin's car and tapping on the window with his knuckle. However, he disputed Irvin's version of the events. Defendant stated that while Irvin appeared "buzzed" from drinking, they had a "normal conversation." He claimed Irvin's demeanor shifted to "argumentative" and he became "tense."

A-0667-22

Defendant corroborated Mia's testimony that Irvin called the women other derogatory names. While he disliked Irvin's comments about the women, defendant maintained that he was not angry. Defendant claimed the argument escalated into a brief physical altercation but disputed that he had a knife or punched Irvin. He denied owning or carrying a pocketknife. Defendant also denied seeing blood or a cut on Irvin's neck.

On July 28, 2022, the jury returned a guilty verdict on all counts. Thereafter, on September 30, 2022, defendant was sentenced to five years of incarceration, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, for second-degree aggravated assault. The remaining counts were merged with the second-degree aggravated assault conviction.

## II.

On appeal, defendant raises the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT COMMITTED MULTIPLE DUE PROCESS AND CONFRONTATION VIOLATIONS BY DENYING CROSS-EXAMINATION ON THE VICTIM'S LIES, INCONSISTENCIES, AND STATE OF MIND; AND BY EXCLUDING EXCULPATORY DIRECT TESTIMONY BY DEFENDANT.

A.    The Court Wrongly Excluded State-of-Mind Evidence Showing that the Victim Feared Being Charged with "Perjury" at the Critical Moment When He Disclosed, and then Recanted, that He Possessed a Knife During the Incident.

B.    The Court Wrongly Excluded State-of-Mind Evidence Showing that the Victim Bizarrely Told EMTs that He Wanted to Leave the Ambulance and Smoke Marijuana Instead of Going to the Hospital, Which Supported the Defense's Self-Harm Theory.

C.    The Court Wrongly Excluded Impeachment Evidence on the Victim's Prior Inconsistent Statements about His Injuries.

D.    The Court Wrongly Excluded Impeachment Evidence Showing that the Victim Lied in the Same Hospital Statements that the State Used to Prove that He Was Not Suicidal.

E.    The Court Wrongly Excluded Defendant's Direct Testimony that He Had Self-Defense Training or Experience, Which Supported His Defense that He Did Not Carry a Knife for Protection.

F.    The Multiple Confrontation and Due Process Violations Were Not Harmless Because They Prevented the Jury from Hearing Exculpatory and Impeachment Evidence in a Trial that Hinged on Credibility

POINT II

THE TRIAL COURT DENIED DEFENDANT A FAIR TRIAL BY PREVENTING HIS COUNSEL FROM ARGUING IN SUMMATION THE DEFENSE'S THEORY OF THE CASE.

A-0667-22

POINT III

THE PROSECUTOR'S IMPROPER OPENING COMMENTS AND CROSS-EXAMINATION OF DEFENDANT DENIED HIM A FAIR TRIAL.

A. The Prosecutor During Her Opening Statement Improperly Asserted Defendant's Guilt as Fact.

B. The Prosecutor Harassed Defendant During Cross-Examination and Communicated a Personal Belief in His Guilt by Repeatedly Accusing Him of the Knife Attack Despite His Numerous Denials.

POINT IV

THE CUMULATIVE EFFECT OF THE NUMEROUS TRIAL ERRORS DENIED DEFENDANT A FAIR TRIAL.

III.

We apply the well-established abuse of discretion standard when reviewing trial court evidential rulings and the permissible scope of cross-examination. State v. Higgs, 253 N.J. 333, 361 (2025) (citing State v. Silva, 131 N.J. 438, 449 (1993)). We have long recognized the right to cross-examine witnesses is constitutionally guaranteed to the accused. State v. Harvey, 151 N.J. 117, 187-88 (1997). However, the scope of cross-examination remains under the control and purview of trial judges. State v. Murray, 240 N.J. Super. 378, 394 (App. Div. 1990). Thus, "[w]e defer to a trial court's evidentiary ruling

10

absent an abuse of discretion."  State v. Garcia, 245 N.J. 412, 430 (2021) (citing State v. Nantambu, 221 N.J. 390, 402 (2015)).  "We do not substitute our own judgment for the trial court's unless its 'ruling "was so wide of the mark that a manifest denial of justice resulted."'"  State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).  "Every mistaken evidentiary ruling, however, will not lead to a reversal of a conviction.  Only those that have the clear capacity to cause an unjust result will do so."  Garcia, 245 N.J. at 430.

## A.

We begin with defendant's argument that the trial court erred by precluding his counsel from asking Irvin whether he was concerned about committing perjury.  Defendant maintained Irvin's questions regarding his fear of perjury were relevant to establish his state of mind when he gave his "allegation" against defendant in his initial video statement and that he "volunteered" a statement during trial preparation on July 22, 2022, that he "may" have had a folding knife in his car on the night of the bar altercation.  Thus, defendant argues Irvin's "subjective belief" was relevant to show that the alleged false statement of possessing the knife could result in a criminal offense.

11

In response, the State contends defendant's argument is barred pursuant to the "invited error" doctrine because he did not request a N.J.R.E. 104 hearing or object to the proposed line of inquiry regarding the limitations established by the court. The State further contends the trial court permitted defense counsel to explore Irvin's inconsistent statement and properly barred defense counsel from asking Irvin questions concerning the legal concept of perjury. We agree with the State's positions.

Under the "invited error doctrine, 'trial errors that were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.'" State v. Munafo, 222 N.J. 480, 487 (2015) (quoting State v. A.R., 213 N.J. 542, 561 (2013)). This doctrine "does not permit a defendant to pursue a strategy . . . and then when the strategy does not work out as planned, cry foul and win a new trial." State v. Williams, 219 N.J. 89, 101 (2014). In essence, it is intended "to prevent defendant[] from manipulating the system." State v. Jenkins, 178 N.J. 347, 359 (2004). "Some measure of reliance by the court is necessary for the invited-error doctrine to come into play." Ibid.

We discern no abuse of discretion in the trial court's decision to preventing defendant from cross-examining Irvin about the alleged fear of perjury. Based

12

on our review of the record, defendant sought to "interject the possibility of perjury" into the case. The trial court offered a <u>Rule</u> 104 hearing, but defendant denied this offer and did not object to the court's ruling. Thus, we conclude defendant invited, or "[a]t the very least, [defendant] consented or acquiesced to" the alleged error, and the trial court's ruling does not constitute reversible error. <u>A.R.</u>, 213 N.J. at 563

## B.

We next address defendant's contention that the trial court erroneously excluded Irvin's statement to the EMTs: "I just want to get out of [the ambulance] and smoke." Defendant argues Irvin's statement evinced a "bizarre" state of mind—self-harm, as a guilty "third-party." He further argues Irvin's statement had "some tendency" to suggest he did not want treatment and was a "highly unusual slashing victim." Therefore, the court was "constitutionally compelled" to ensure that the jury heard the statement. We disagree.

"Relevant evidence" is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. Evidence is probative "when it has a tendency 'to establish the proposition that it is offered to prove.'" <u>State v. Burr</u>, 195 N.J. 119, 127 (2008) (quoting <u>State v. Allison</u>, 208 N.J. Super. 9, 17 (App. Div. 1985)). Relevant evidence

13 <span>A-0667-22</span>

may be excluded by the trial court if "its probative value is substantially outweighed by the risk of . . . [u]ndue prejudice . . . waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403.

It is well established that counsel is permitted to attack the credibility of a witness on cross-examination. N.J.R.E. 611(b). However, "[e]vidence must be relevant for it to be admissible." State v. Scharf, 225 N.J. 547, 568 (2016). A defendant does not have an "unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." State v. Jenewicz, 193 N.J. 440, 451 (2008) (alteration in original) (quoting Montana v. Egelhoff, 518 U.S. 37, 42 (1996)).

Contrary to defendant's assertion, the statement was not an "exculpatory conclusion that Irvin was the knife-wielder;" rather, it was conjecture. Irvin stated that he wanted to smoke. Defendant assumed that he was referring to smoking cannabis. However, the cannabis statement does not demonstrate proof that Irvin had a knife and cut himself. Therefore, the court properly sustained the objection, and that determination was a proper exercise of the trial court's discretion.

A-0667-22

C.

We next review defendant's contention that the trial court erred in preventing defendant from probing about Irvin's prior inconsistent statement regarding his left wrist injury. Defendant argues Irvin's alleged prior inconsistent statement was relevant to his "general credibility" and "the specific omission of the 'wrist' injury—a type of injury commonly associated with self-harm or suicide—tended to suggest a . . . self-harm inference."

"A prior inconsistent statement may . . . be used to attack the credibility of a witness." Parker v. Poole, 440 N.J. Super. 7, 22 (App. Div. 2015) (citing N.J.R.E. 607). A prior inconsistent statement is one that "contradict[s] or call[s] into question the [declarant's] version of events as recounted at trial." State v. Burris, 145 N.J. 509, 535 (1996). "A trial judge retains the authority under both N.J.R.E. 403 and N.J.R.E. 611 to guard against unfair use of the technique." Manata v. Pereira, 436 N.J. Super. 330, 345-46 (App. Div. 2014). Thus, judges have the ability "to exclude from [jurors] consideration irrelevant or improper evidence and materials which have come to their attention." State v. Medina, 349 N.J. Super. 108, 130 (App. Div 2002) (quoting State v. Kunz, 55 N.J. 128, 145 (1969)).

A-0667-22

We are persuaded by the State's argument that defendant has "mischaracterized" the record. We agree with the trial court's assessment that defendant's description of Irvin's statements in the record was not accurate. The court analyzed the written statement, which is not part of the record, and found Irvin referred to deflecting the blade by pushing defendant away after Irvin felt like he had been nicked with the blade. Irvin's testimony was also corroborated by the photograph admitted into evidence of his left wrist.

We also agree with the court that Irvin's initial statement was not the "most artful piece," and he was not the "most articulate" because he was "a very meandering person." Nonetheless, Irvin's testimony on direct examination did not contradict the video recorded statement or the report of his trial preparation interview. Thus, we conclude no reversible error occurred because the trial court, acting as a gatekeeper, properly excluded the question based on defense counsel's mischaracterization of the record.

D.

Defendant also contends the trial court erred in preventing cross-examination of the ED physician about portions of Irvin's hospital record. He argues that he should have been allowed to ask the ED physician about the inconsistent statements related to Irvin's address and employment contained in

16

his hospital records. He also argues that he was prevented from probing about Irvin's suicidal ideation and behavior when he was admitted to the emergency department.

He argues the court violated "numerous" rules of evidence regarding the admissibility of Irvin's statements concerning his claim that he was not suicidal and his different address and employment contained within the hospital medical records. Defendant contends these statements were relevant to impeach Irvin's general credibility: Irvin's claim that he was not suicidal; and his different address and employment were admissible under N.J.R.E. 607(1) and N.J.R.E. 611(b). Defendant also argued the court improperly ruled the ED physician was the "wrong" witness to testify regarding the contradictions between Irvin's direct testimony and the hospital records. We reject defendant's contentions.

A party may impeach the credibility of a witness by introducing extrinsic evidence. N.J.R.E. 607. However, extrinsic evidence of a prior inconsistent statement may be excluded if the "party seeking to impeach a witness with a prior inconsistent statement [does not] afford that witness 'an opportunity to explain or deny the statement.'" State v. Williams, 184 N.J. 432, 452 (2005) (quoting N.J.R.E. 613(b)).

The parties stipulated and agreed to certain redactions of personal information in the hospital records about Irvin.[2] The court sustained both of the State's objections to defense counsel's questions regarding Irvin's address and employment. We agree with the trial court that those questions were "so far afield" because they were unrelated to Irvin's injuries and the medical treatment provided. The record establishes that counsel had "ample opportunity" to question Irvin about his employment and address as prior inconsistent statements during cross-examination but failed to do so. We, therefore, conclude that the trial court properly exercised its discretion in barring defense counsel from probing about Irvin's address and employment.

In regard to defense counsel's argument that the trial court erred in denying cross-examination on Irvin's "damning" hearsay statements denying suicidal ideation, we likewise reject defendant's contention. Hearsay is an out-of-court statement that is offered for the truth of the matter asserted therein. N.J.R.E. 801(c). Hearsay statements are inadmissible unless they fall within an exception to N.J.R.E. 802. Although the hospital records were properly admitted under the business records exception, the records served as a basis for Irvin's medical treatment. The court properly ruled that the ED physician was

---

[2] Defendant has failed to include the hospital records as part of his appendix.

the "wrong" person to testify because he testified that the emergency room visit did not "specifically" address Irvin's mental health and the physician did not conduct Irvin's screening and intake. Thus, the trial court properly exercised its discretion in excluding the hearsay statements regarding Irvin's alleged suicidal ideation.

## E.

Lastly, defendant argues the trial court erred by preventing him from testifying on direct examination about his alleged self-defense training. In support of that theory, defendant sought to elicit testimony that he learned to defend himself when he previously worked as bouncer. Defendant also sought to establish that he did not have a knife on the night of the bar altercation, nor did he regularly carry a knife. Defendant also contends that in sustaining the State's objections, the trial court violated N.J.R.E. 401 and 402, which deprived him of his "due process right to present a complete defense."

Under the Sixth Amendment to the U.S. Constitution and Article I, Paragraph 10 of the New Jersey Constitution, a defendant is guaranteed "nothing less than 'a meaningful opportunity to present a complete defense.'" State v. Garcia, 195 N.J. 192, 202 (2002) (quoting State v. Garron, 177 N.J. 147, 168 (2003)). A defendant's right, however, is subject to the legitimate interests of

A-0667-22

the court, including its role as "gatekeeper for the admission or exclusion of evidence." State v. Rosales, 202 N.J. 549, 562 (2010); see also Garcia, 195 N.J. at 202-03.

Defendant's theory of the case was Irvin inflicted self-harm because he was "depressed" due to the breakup with his girlfriend. Prior to the testimony of the ED physician, the trial court noted that defendant "reiterated over and again" that he was not pursuing a self-defense theory. Yet, on direct examination, defendant sought to introduce testimony about self-defense. Defendant's testimony was not relevant to his self-harm theory. Garcia, 195 N.J. at 203. Further, the testimony had the potential to confuse the jury or invite speculation. We discern no error and conclude the trial court did not deprive defendant of the meaningful opportunity to present his defense.

## IV.

Defendant argues that his theory of Irvin's self-harm, third-party guilt during summation was based on reasonable inferences grounded "solidly" in the trial evidence. Thus, the trial court's preclusion of his theory deprived him of a fair trial. Defendant's contention is not supported by the record.

Defendant parses the New Jersey's Supreme Court's reasoning in Hayes v. Delamotte, which states that "counsel is allowed broad latitude in summation."

231 N.J. 373, 387 (2018) (quoting Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999)). Defendant disregards the Court's further direction that "latitude is not without its limits, and 'counsel's comments must be confined to the facts shown or reasonably suggested by the evidence introduced during the course of the trial.'" Ibid. (quoting Colucci, 326 N.J. Super. at 177). Moreover, "counsel 'should not misstate the evidence nor distort the factual picture.'" Ibid. (quoting Colucci, 326 N.J. Super. at 177).

Here, defendant argued: "So[,] I want you to consider that when I said in the beginning[,] we don't always know why people might cut themselves or try to harm themselves, but in this case, I think what the evidence would lead you to believe [Irvin] wanted to get back with her." Although it may have been improbable or absurd, it was permissible to argue Irvin wanted to reunite with his girlfriend.

Defense counsel then argued: "It's very strange, but a lot of times when people go through an emotional breakup, they find themselves getting into freak car accidents, some type of drama, or something in hopes maybe the loved one will come rushing to the hospital, may come to their aid[.]" The trial court interjected and stated there was no evidence to support that comment. Out of

the presence of the jury the court explained that Irvin harmed himself to get his "phantom ex-girlfriend" back was "a leap too far."

Defense counsel's comments were neither "confined to the facts shown or reasonably suggested by the evidence introduced during the course of the trial." Colucci, 326 N.J. Super. at 177. In essence, the comments misstated the evidence and distorts the fact that Irvin was upset about breaking up with his girlfriend. The trial court instructed the jury that counsel's comments were not evidence, and we presume the jury followed those instructions. State v. Burns, 192 N.J. 312, 335 (2007).

## V.

Lastly, defendant raises three arguments for the first time on appeal. First, defendant argues the prosecutor engaged in two instances of misconduct: the prosecutor made an unqualified declaration of defendant's guilt in the opening statement before evidence had been presented, and during his cross-examination, the prosecutor "relentlessly" harassed defendant on at least twenty-two occasions about having a knife and slashing Irvin's neck. Defendant also argues that the cumulative effects of the numerous trial errors deprived him of a fair trial. These issues are not properly before us because defendant failed to present these arguments to the trial court. See State v. Holland, 423 N.J. Super.

22

309, 319 (App. Div. 2011) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Nevertheless, for the sake of completeness, we briefly address defendant's contentions. In regard to the prosecutor's opening remarks, we reject defendant's argument that "despite no defense objection, the prosecutor's premature assertions of [defendant]'s guilt had the clear capacity to taint the jury and denied him a fair trial."

"When a defendant fails to object to an error or raise an issue before the trial [judge], we review for plain error." State v. Ross, 229 N.J. 389, 407 (2017) (quoting R. 2:10-2). We see no error, let alone plain error.

We conclude there is no prosecutorial misconduct. The prosecutor's remarks were "limited to the facts"—Irvin's verbal argument with defendant, which ended with defendant slashing Irvin's throat with a knife, leaving Irvin permanently scarred, to be proved by competent evidence. State v. Rivera, 437 N.J. Super. 434, 446 (App. Div. 2014); State v. Echols, 199 N.J. 344, 360 (2009). Contrary to defendant's contentions, those brief remarks served as the outline of the State's case to be presented to the jury. Thus, the prosecutor's remarks did not amount to misconduct or plain error or "produce an unjust result." Ibid. (quoting R. 2:10-2).

Defendant next argues that during cross-examination of defendant, the prosecutor "relentlessly" harassed defendant on at least twenty-two occasions while questioning him about having a knife and slashing Irvin's neck. He conceded that no objection was made but argues the court's "failure to intervene" placed him in an "unfair" and "untenable" position to either object or "appear scared" of questions about the altercation. We reject defendant's contentions.

In this case, the State had the burden of proving beyond a reasonable doubt that defendant committed the offenses, which allowed the prosecutor "to vigorously and forcefully present the State's case." State v. Timmendequas, 161 N.J. 515, 582 (1999) (citing State v. Rose, 112 N.J. 454, 509 (1988)). Here, defendant chose to testify, and therefore, subjected himself to thorough and vigorous cross-examination aimed at scrutinizing the credibility of his account. See State v. Robinson, 157 N.J. Super. 118, 120 (App. Div. 1978). Defendant has not shown that the prosecutor's questions constituted prosecutorial misconduct. We further conclude the State produced ample competent evidence to support the verdict, and therefore, we are not persuaded the prosecutor's questions produced an unjust result.

Finally, when multiple errors are alleged, "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to

24

render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007). However, even where a defendant alleges multiple errors, "the theory of cumulative error will still not apply where no error was prejudicial, and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014). Given our conclusion that the trial court did not err in its evidential rulings, we likewise conclude there are no cumulative errors that deprived defendant of a fair trial.

To the extent we have not expressly addressed any of defendant's remaining arguments, we find they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0667-22